**SMART SMR OF NEW YORK, INC.,**
**d/b/a/ Nextel Communications,**
**Plaintiff,**

**v.**

**The ZONING COMMISSION OF THE**
**TOWN OF STRATFORD,**
**Defendant.**

**No. 3:97 CV 1292(GLG).**

United States District Court,
D. Connecticut.

Feb. 17, 1998.

· Christopher B. Fisher, Cuddy & Feder & Worby, White Plains, NY, for Plaintiff.

Richard J. Buturla, Berchem, Moses & Devlin, P.C., Milford, CT, for Defendant.

## OPINION

GOETTEL, District Judge.

Pursuant to Federal Rule of Civil Procedure 56, plaintiff Smart SMR of New York, Inc., d/b/a Nextel Communications, ("Nextel") moves for summary judgment on all counts of its complaint. For the reasons discussed below, plaintiff's motion (Document # 8) is GRANTED in part and DENIED in part.

## BACKGROUND.

Nextel has been authorized by the Federal Communications Commission to construct and operate a digital mobile radio system in Connecticut in order to provide wide-area digital specialized mobile radio services ("SMR Services"). Nextel commenced this action after the Zoning Commission of the Town of Stratford (the "Commission") denied its petition for a special case permit to install a personal wireless service facility on an existing 110 foot tall steel lattice tower (the "Existing Tower"). The Existing Tower is located on a ten acre parcel, in a one-family residential zoning district ("RS–1 District"), owned by Wilma and Petro Fedorko (together, the "Fedorkos"). The Existing Tower is currently used as a windmill. Nextel entered into a lease agreement with the Fedorkos to modify the Existing Tower, by replacing the windmill rotors with a personal wireless service facility, and to place an unmanned equipment cabinet at the tower's base which would be concealed by mature evergreen trees.

After securing the lease with the Fedorkos, Nextel applied for a special case permit from the Commission on April 18, 1997. The Commission held a public hearing on May 20, 1997 to consider Nextel's application, and it voted on the petition at a meeting held on June 9, 1997. In a letter dated June 12, 1997, Nextel was informed that the Commission had denied its petition.

Nextel now moves for summary judgment claiming that the Commission's denial of its special case petition violated the Telecommunications Act of 1996, Pub.L. 104–104, 110 Stat. 56 (the "Telecommunications Act" or the "Act") (Counts One–Seven and Count Ten) and the Commerce Clause (Count Eight). Nextel further argues that it was deprived of its federally guaranteed rights as protected by 42 U.S.C. § 1983 (Count Nine). Finally, Nextel alleges that the Commission's denial was arbitrary and capricious under Connecticut state law (Count Eleven).

## DISCUSSION

A court may grant summary judgment only if it determines that there is no genuine issue of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). When ruling on a summary judgment motion, a court must construe the facts in a light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If there is no genuine issue of material fact, the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

This Court finds that summary judgment is appropriate because the material facts of this case are not in dispute.[1] The parties

---

1. The Commission submitted a Local Rule 9(c)(2) statement setting forth the material facts as to which it contends there exist genuine issues to be tried. Contrary to the Commission's assertion, the substance of the Commission's 9(c)(2) state- ment relates only "to interpretation of the legal standards involved and not the material facts themselves." *Sprint Spectrum L.P. v. Town of Easton*, 982 F.Supp. 47, 50 (D.Mass.1997). Additionally, the Commission has not submitted any

have submitted the record from the Stratford Zoning Commission ("Return of Record"), including a copy of Nextel's petition for a special case permit, the Commission's letter to Nextel informing it that its petition was denied, the transcript of the May 20 public hearing on Nextel's petition, the minutes of the Commission's meeting on June 9 at which Nextel's application was considered, and a copy of Stratford's zoning regulations.

## I. TELECOMMUNICATIONS ACT

Nextel asserts that the Commission's denial of its petition for a special case permit violated several provisions of the Telecommunications Act. Specifically, Nextel contends that the Commission's denial: (a) was not supported by substantial evidence contained in a written record (Counts One and Ten); (b) prohibited or had the effect of prohibiting the provision of Nextel's personal wireless services (Count Two); (c) was wrongfully based on considerations of the environmental effects of radio frequency emissions (Count Three); (d) unreasonably discriminated against Nextel (Count Four); (e) was a wrongful entry barrier (Count Five); and (f) prohibited or had the effect of prohibiting Nextel's ability to provide interstate or intrastate telecommunications services (Count Six).

 Congress passed the Act in order to increase competition in the telecommunications industry. Although the Act does not "completely preempt the authority of state and local governments to make decisions regarding the placement of wireless communications service facilities within their borders, it does impose some limitations." *BellSouth Mobility, Inc. v. Gwinnett County, Georgia,* 944 F.Supp. 923, 927 (N.D.Ga.1996). In cases brought under the Act, the government agency that denied a siting request bears the burden of proof. *Sprint Spectrum L.P. v. Town of Easton,* 982 F.Supp. 47, 49 (D.Mass. 1997) (quoting *United States Cellular Corp. v. Board of Adjustment of Des Moines,*

LACL No. CL 00070195, slip op., at 5 (Iowa Dist. Ct. Polk County Jan. 2, 1997)).

### A. Counts One and Ten

 Pursuant to section 332(c)(7)(B)(iii), if a local zoning authority denies a request to install a personal wireless service facility, the denial must be in writing and it must be "supported by substantial evidence contained in a written record." The substantial evidence standard is the traditional means of reviewing agency actions. *BellSouth,* 944 F.Supp. at 928 (quoting House Bill 104–458). A reviewing court relies on the written decision to analyze the zoning authority's rationale and to determine if the agency complied with the Act's requirements. *Western PCS II Corp. v. Extraterritorial Zoning Auth. of Santa Fe,* 957 F.Supp. 1230, 1236 (D.N.M. 1997). Additionally, the decision "must contain written findings of fact tied to the evidence of record." *AT & T Wireless Servs. of Florida, Inc. v. Orange County,* 982 F.Supp. 856, 859 (M.D.Fla.1997). The court in *Orange County* explained that:

> local governments may not mask hostility to wireless communications facilities with unreasoned denials that make only vague references to applicable legal standards. The procedural requirement of a written decision with articulated reasons based on record evidence forces local governments to rely on supportable neutral principles if they wish to deny a particular wireless installation.

*Id.* at 860. If the written decision does not set forth the zoning authority's rationale, this "ground alone is sufficient to quash the [zoning authority's] decision." *Id.* at 859.

 Here, the Commission informed Nextel that its petition had been denied in a letter dated June 12, 1997. Return of Record, Item 4. In pertinent part, the letter provides:

> [t]his is to officially notify you that at a meeting of the Zoning Commission held June 9, 1997 it was voted to deny your petition for approval as a Special Case

---

affidavits in support of its opposition to plaintiff's summary judgment motion. Indeed, in its brief opposing plaintiff's summary judgment motion, the Commission does no more than baldly state

that there are disputed issues of fact; it never specifically refers to facts as to which the parties differ.

under Section 20 of the Zoning Regulations as required by Section 4.1.7 in order to install a telephone exchange for wireless communications on property located in an RS–1 District, at 630 James Farm Road. *Id.* The Commission contends that its reasons for its decision to deny Nextel's application are set forth in the hearing transcript of May 9, 1997 and in the minutes of a Commission administrative session held June 9, 1997. In *AT&T Wireless PCS, Inc. v. City Council of Virginia Beach,* 979 F.Supp. 416, 427–28 (E.D.Va.1997), the court found that a city council's rubber stamp denial of a conditional use permit for a personal wireless service facility without any reasons, findings, or assertions violated section 332(c)(7)(B)(iii). Even though the city council provided the court with a transcript of the hearing, the court found that "[t]ranscripts of hearings are properly part of the written record, but as the statute draws a distinction between the written decision and the written record, they can clearly not be the same document." *Id.* at 428; *see Western PCS,* 957 F.Supp. at 1236 (stating that a zoning authority's reliance on a post-appeal transcript will not satisfy the written decision requirement). Indeed, a written decision would reflect the Commission's collective reasoning, whereas the transcripts of the May 20 hearing and the June 9 session provide insight only into the individual Commission members' opinions.

By failing to provide reasons for its decision, the Commission places the burden on this Court to wade through the record below in an attempt to discern the Commission's rationale. Because the Commission's June 12 letter did no more than inform Nextel that its petition had been denied, we find that the Commission violated section 332(c)(7)(B)(iii). *See Orange County,* 982 F.Supp. at 859–60; *Illinois RSA No. 3, Inc. v. County of Peoria,* 963 F.Supp. 732, 743 (C.D.Ill.1997); *Western PCS,* 957 F.Supp. at 1236. Thus, we grant plaintiff's summary judgment motion on Counts One and Ten.

## B. Count Two

■ Nextel argues that the Commission violated section 332(c)(7)(B)(i)(II) because the denial of its petition had the effect of prohibiting the provision of personal wireless services in the northern portion of Stratford. A zoning commission's decision does not prohibit or have the effect of prohibiting the provision of personal wireless services merely because it grants a competitor's permit and denies the plaintiff's permit. In *Virginia Beach,* the court interpreted section 332(c)(7)(B)(i)(II) as limiting "general bans or policies that prohibit or have the effect of prohibiting the provision of personal wireless services." 979 F.Supp. at 427; *see Orange County,* 982 F.Supp. at 860 (not granting relief to a wireless service provider under section 332(c)(7)(B)(i)(II) because it could not demonstrate that the city council had a general bias against a communications tower in a residential area).

■ For Nextel to prevail under section 332(c)(7)(B)(i)(II), it must be demonstrated that the Commission has a general policy against granting special case permits for personal wireless service facilities in residential areas. *Virginia Beach,* 979 F.Supp. at 427. In an RS–1 District, section 4.1.7 of the Stratford Zoning Regulations sets forth a permitted use for:

> [a] telephone exchange transformer substation, sewer or water pumping station, water tank, standpipe, water supply reservoir or reservation, bus waiting room or similar public utility use with no outside storage or supplies, provided that the Zoning Commission finds that such use is necessary within the residence district in which it is located and that the proposed architecture and landscaping are in harmony with the character of the neighborhood.

Return of Record, Item 14, Stratford Zoning Regulations § 4.1.7. Section 4.1.7 therefore requires a potential wireless service provider to apply for a special case permit for the "approval of any use not provided for or allowed by these regulations." Return of Record, Item 14, Stratford Zoning Regulations § 20.1.

We find that Nextel has established that the Commission unreasonably based the denial of its petition on general opposition to allowing personal wireless service facilities in RS–1 Districts. In the Commission's brief, it

asserts that "[t]he fact that the Premise is located in an RS–1 district, provides a substantial and objectively justifiable basis for the denial of the Petition since the regulations do not authorize a commercial communications tower in an RS–1 district. On its face, the use is not harmonious with the district." Def.'s Mem. at 8–9. The Commission further argues that "[t]he Zoning Regulations do not give any authorization to the Commission to locate a commercial communications tower in an RS–1 zoning district. Thus, the fact that the Plaintiff wanted to place . . . its wireless antennas on the particular site in the RS–1 district provided a substantial basis for the denial." Def.'s Mem. at 10. Contrary to the Commission's contentions, however, the proposed placement of Nextel's facility in an RS–1 District means only that Nextel required the Commission's approval as set forth in the guidelines of sections 4.1.7 and 20.2.1 of the Stratford Zoning Regulations.

The Commission's general bias against granting applications for the placement of personal wireless service facilities in residential districts was also apparent at the May 20 and June 9 meetings. During the May 20 public hearing, there was a discussion about the commercial nature of Nextel's proposed facility between Commission member Youngquist and Gary Muciano, an architect who testified on Nextel's behalf. Return of Record, Item 12, at 10–11. Muciano agreed with Member Youngquist that Nextel's proposed use would be commercial. Member Youngquist expressed concern that Nextel might require additional facilities to ensure seamless coverage of its SMR Services. She stated, "So we could have one of these every two miles all through Stratford, is [that] what you're saying? Oh, that should be fun." Id. at 11. After Robert Bertona, a Nextel engineer explained that the town's topography might require Nextel to install additional facilities, Member Youngquist stated, "So this is only the first of many." Id.

At the June 9 meeting at which the Commission voted on Nextel's petition, the minutes indicate that Member Hess "stated he feels this is a commercial venture in an RS–1 District." Return of Record, Item 13, at 14.

Member Pitcher also stated "that the windmill could be considered residential but the tower is commercial." Id. Lastly, the planning department comments, submitted to the Commission before the May 20 public hearing, state that the "Town has no wireless master plan. . . . It would be preferable to limit the impacts of this use on this residential neighborhood, since the use is becoming more commercial in nature." Return of Record, Item 8, at 1.

By generally disfavoring the approval of placing personal wireless service facilities in all residential zones, and instead of adhering to a policy whereby the Commission would consider each such petition on a case-by-case basis, we therefore find that the Commission's policy had the effect of prohibiting the provision of personal wireless services. See County of Peoria, 963 F.Supp. at 744. Thus, we grant Nextel's summary judgment motion on Count Two.

## C. Count Three

■■ Pursuant to section 332(c)(7)(B)(iv), the Commission cannot regulate the placement of Nextel's proposed facility on the basis of the "environmental effects of radio frequency emissions." The record does not support Nextel's position that a discussion of the safety of emissions which allegedly took place at the June 9 hearing necessarily means that the Commission directly or indirectly based its denial on this factor. As Nextel concedes, a local authority does not violate the Act for merely inquiring into the safety of emissions from a wireless facility. Pl.'s Reply Mem. at 14. While Nextel was questioned about the safety of emissions at the May 20 public hearing, there is no indication that these concerns were a factor in the Commission's decision. Indeed as plaintiff notes, at the June 9 meeting, Commission members stated that they should not use emission safety concerns as a reason for denying Nextel's position. Georgiou Aff. ¶ 6. Accordingly, we find that the Commission did not violate section 332(c)(7)(B)(iv), and we therefore deny Nextel's summary judgment motion on Count Three.

## D. Count Four

Count Four of the complaint alleges violation of section 332(c)(7)(B)(i)(I) which prohibits zoning authorities from unreasonably discriminating among providers of functionally equivalent services in the regulation of the placement, construction, and modification of personal wireless service facilities. Nextel argues that in order for it to compete with other providers, it must install a personal wireless service facility on the Existing Tower on the Fodorkos' property to remedy gaps in its SMR Service. Nextel also asserts that the Commission unreasonably discriminated against it by granting Bell Atlantic NYNEX Mobile's ("BANM") petition for special case approval. On December 11, 1996, the Commission approved BANM's application to install a personal wireless service facility on an existing billboard in Stratford located in an "MA District," which is a light industrial district. Compl. Ex. C.

The Commission's act of granting BANM's application and denying Nextel's petition is not in itself actionable. *Virginia Beach,* 979 F.Supp. at 425; *see Sprint Spectrum L.P. v. Jefferson County,* 968 F.Supp. 1457, 1467 (N.D.Ala.1997) (stating that it is not enough for a plaintiff merely to show unequal treatment between itself and its competitor). Instead, the issue is whether the Commission acted unreasonably in making these different decisions. *Virginia Beach,* 979 F.Supp. at 425. A zoning authority acts reasonably if it had a legitimate basis for denying a permit to provide services. *Id.* According to the legislative history, a zoning authority may consider factors such as visual, aesthetic, or safety concerns. H.R.Rep. No. 104–458, at 208 (1996).

We find that the Commission unreasonably discriminated against Nextel because it did not have a legitimate basis for denying Nextel's special case petition. According to section 4.1.7 of the Stratford Zoning Regulations, a personal wireless service facility must be necessary within the relevant residential district, and the proposed architecture and landscaping must be in harmony with the neighborhood's character. Return of Record, Item 14. Also, section 20.2.1 sets forth criteria and objectives for the Commis-

sion to consider when reviewing applications for special case permits. *Id.*

Nextel's petition is unusual because it did not involve the construction of a lattice tower on which to place its wireless service facility. Instead, Nextel merely sought to modify the Existing Tower. General aesthetic and visual concerns are therefore only an issue with regard to the modifications to the Existing Tower, and not the Existing Tower itself. Moreover, Nextel provided ample evidence indicating that its modifications to the Existing Tower would complement the neighborhood's character, more so than did the Existing Tower's windmill rotors. As part of its application, Nextel provided the Commission with simulated photographs of the Existing Tower with the wireless service facility as compared to the Existing Tower with windmill rotors. Return of Record, Item 1, Ex. F. The facility consists of three "whip" antennas which are approximately fifteen feet in height and three inches in diameter. According to Nextel, the whip antennas would be less visible from the surrounding neighborhood than the windmill rotors because the antennas have a sky-like finish. Nextel further asserts that the unmanned equipment cabinet which would be located at the tower's base would be concealed by seven evergreen trees.

The Commission raised several concerns about Nextel's proposed modifications at the May 20 and June 9 meetings, including the commercial-residential distinction and safety, visual, and aesthetic issues. As previously discussed, the Commission cannot rely on the commercial nature of Nextel's facility as a substantial basis for its decision. With respect to safety, Nextel assured the Commission at the May 20 public hearing that the unmanned cabinet would be secure. Return of Record, Item 12, at 8–9, 13. Nextel also stated that the internal telecommunications equipment works on low voltage, and therefore would not present any risk of harm.

During the June 9 meeting, Member Youngquist stated that "she feels this windmill tower is obtrusive to the area and the new proposal for the communications equipment to be obtrusive.". Return of Record, Item 13, at 4. As mentioned above, however,

the visual and aesthetic concerns of the Existing Tower are not issues for the Commission because the Commission approved the construction of the Existing Tower in 1983 when it considered the Fedorkos' application. Additionally, Nextel stated that the equipment cabinet's exterior would be covered with material matching the Fedorkos' house. Return of Record, Item 12, at 12. Nextel would also conceal the equipment cabinet by planting seven evergreen trees. The Commission found these exact measures acceptable when it granted BANM's special case petition. Compl. Ex. C. Thus, the Commission's visual and aesthetic concerns of the modifications to the Existing Tower lack a legitimate basis.

Lastly, at the June 9 meeting, Member Youngquist also stated that the truck use on the road to the Fedorkos' property would have a "negative impact." This concern has no legitimate basis because the Police Department found that Nextel's proposed modifications to the Existing Tower would not create any traffic congestion because the facility would be serviced by one serviceperson on a monthly basis. Return of Record, Item 8.

Without a legitimate basis for its decision, we find that the Commission unreasonably discriminated against Nextel. *See Town of Easton,* 982 F.Supp. at 51 (finding that a zoning appeals board unreasonably discriminated against a personal communications services provider because the board did not base its denial on visual, aesthetic, or safety concerns). Thus, we grant Nextel's summary judgment motion on Count Four.

## II. COMMERCE CLAUSE

In Count Eight of the complaint, Nextel contends that the Commission violated the Commerce Clause by discriminating against and placing an undue burden on interstate commerce. U.S. Const. art. I, § 8, cl. 3; *see South–Central. Timber Dev., Inc. v. Wunnicke,* 467 U.S. 82, 87, 104 S.Ct. 2237, 81 L.Ed.2d 71 (1984) (interpreting the Commerce Clause as limiting the states' ability to enforce regulations that substantially burden interstate commerce). To state a cause of action under the dormant or negative Com-

merce Clause, a plaintiff must demonstrate that the state regulation discriminates against, as opposed to having only incidental effects on, interstate commerce. *Oregon Waste Sys., Inc. v. Department of Envtl. Quality,* 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994) (quoting *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979)).

There is no evidence in the record that suggests Stratford's zoning regulations benefitted in-state economic interests and burdened out-of-state economic interests. *Id.* Stratford's zoning regulations are therefore nondiscriminatory and will be valid unless "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Id.* (citation omitted). Plaintiff does not articulate how the Commission's denial of its special case petition operated to confer local benefits, such as if the Commission had granted permits of in-state personal wireless service providers to the exclusion of national or out-of-state applicants. Because the Commission's denial of Nextel's petition did not impose a burden on interstate commerce that is clearly excessive in relation to the supposed local benefits, we find that the Commission did not violate the Commerce Clause. Accordingly, plaintiff's summary judgment motion on Count Eight is denied.

## III. SECTION 1983

Count Nine of the complaint alleges deprivation of Nextel's federally guaranteed rights in violation of 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must prove that the defendant, acting under the color of state law, deprived the plaintiff of a right secured by the Constitution and laws of the United States. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

If a plaintiff's cause of action is not based on a Constitutional violation, the plaintiff must assert the violation of a federal right, and not merely a federal statutory violation. *Blessing v. Freestone,* 520 U.S. 329, ——, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997). Here, Nextel argues that it may pursue a section 1983 claim for the Commission's alleged violations of the Telecommunications Act and the Commerce Clause. Because we dismissed Nextel's Commerce Clause claim, the issue is whether violations

of section 332(c)(7) of the Act are enforceable under section 1983.

■ A cause of action under section 1983 is not available to aggrieved plaintiffs if "the federal statute at issue implicitly or explicitly precludes a § 1983 action." *Town of Easton*, 982 F.Supp. at 53 (citing *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). Congress may implicitly foreclose a section 1983 action by "creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing*, 520 U.S. at ——, 117 S.Ct. at 1360. Additionally, a plaintiff cannot maintain a section 1983 action if the federal statute, here the Telecommunications Act, does not create a substantive right. *Blessing*, 520 U.S. at ——, 117 S.Ct. at 1359. To determine if section 332(c)(7) of the Act creates a substantive right, courts should consider whether (1) Congress intended the statutory provision to benefit the plaintiff; (2) the right allegedly protected by the Act is not so " 'vague and amorphous' that its enforcement would strain judicial competence;" and (3) the Act clearly imposes a binding obligation on states. *Id.* (citation omitted).

■ In *Town of Easton*, the court analyzed whether a personal communications services provider could base its section 1983 claim on alleged violations of the Telecommunications Act. 982 F.Supp. at 53. The court found that the Act does not implicitly or explicitly foreclose section 1983 actions, nor did the Act provide a comprehensive enforcement scheme which would preclude a section 1983 action. *Id.* Additionally, the court found that the Act creates substantive rights because it allows an individual to sue in state or federal court if he or she was adversely affected by a zoning authority's decision. Moreover, the court determined that enforcing a plaintiff's rights under the Act through section 1983 would not strain judicial competence. *Town of Easton*, 982 F.Supp. at 53 (applying the Supreme Court's three-prong test from *Blessing*). Consequently, the court recognized the plaintiff's cause of action under section 1983. After finding that the zoning board of appeals had acted under the color of state law and violated the plaintiff's rights under the Act, the court granted the plaintiff summary judgment on its section 1983 claim. *Id.*

Because we agree with the court's reasoning in *Town of Easton*, we find that a section 1983 claim is available to Nextel. As a local zoning board, the Commission acted under the color of state law. *Id.* n. 4; *see Atkins*, 487 U.S. at 49 (finding that a person acts under the color of state law if he or she "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law' ") (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). Also, by violating section 332(c)(7) of the Act, we find that the Commission deprived Nextel of its federally guaranteed rights. Accordingly, we grant plaintiff's summary judgment motion on Count Nine.

## IV. CONNECTICUT STATE LAW

■ Count Eleven of the complaint alleges that the Commission's denial of Nextel's petition for a special case permit was arbitrary and capricious under Connecticut law. When reviewing the decision of a local zoning authority, this Court must determine if the agency acted unreasonably, arbitrarily or illegally, or abused its discretion. *Ottochian v. Freedom of Information Comm'n*, 221 Conn. 393, 397, 604 A.2d 351, 353 (1992). Accordingly, the agency's decision must stand if based its decision on valid reasons. *Willard v. Zoning Bd. of Appeals of Hartford*, 152 Conn. 247, 248–49, 206 A.2d 110, 111–12 (1964).

■ When considering Nextel's application for a special case permit, the Commission was required to determine whether the proposed use of the Existing Tower conformed to the requirements in section 4.1.7 of the Stratford Zoning Regulations. *See A.P. & W. Holding Corp. v. Planning and Zoning Board of Milford*, 167 Conn. 182, 185, 355 A.2d 91, 93 (1974). Accordingly, the modifications to the Existing Tower would be permitted if the use is necessary within the relevant residential district if the proposed architecture and landscaping are in harmony with the character of the neighborhood. Return of Record, Item 14, § 4.1.7. As previously discussed, any aesthetic or visual concerns

relate only to the Existing Tower as modified by the wireless service facility, and not to the structure of the Existing Tower itself. As before, we find that the Commission acted unreasonably because it did not have a legitimate basis for denying Nextel's petition based on aesthetic and visual concerns. Moreover, the Commission never found that Nextel had a viable alternative to placing the wireless service facility in an RS–1 District. Indeed, Nextel provided ample evidence indicating that it had considered several options to the Fedorkos' property and concluded that the Existing Tower was the only location from which it could provide its SMR Services. Return of Record, Item 12, at 2–4, 6–7, 20–21; Return of Record, Item 1, Ex. A, at 5; Bertona Aff. ¶¶ 11–18. Nextel also informed the Commission that any alternative location would probably require the construction of a monopole or a steel lattice tower. Return of Record, Item 12, at 21. Thus, we find that the Commission's denial of Nextel's special case petition was arbitrary and capricious under Connecticut law because it was not supported by the record. We therefore grant Nextel's summary judgment motion on Count Eleven.

## V. REMEDIES

Based on the Commission's arbitrary and capricious denial of Nextel's special case petition, this Court declares that the denial as set forth in the June 12 letter is null and void. The Commission is also ordered to approve Nextel's special case petition "under such terms and conditions as the [commission] might reasonably prescribe." *Mobil Oil Corp. v. Zoning Comm'n*, 30 Conn.App. 816, 821, 622 A.2d 1035, 1037 (1993); *see A.P. & W.*, 167 Conn. at 188–89, 355 A.2d at 95.

### CONCLUSION

For the foregoing reasons, plaintiff's summary judgment motion (**Document # 8**) is GRANTED on Counts One, Two, Four, and Ten, (Telecommunications Act), Nine (section 1983), and Eleven (Connecticut state law). We also DENY plaintiff's summary judgment motion on Counts Three (Telecommunications Act) and Eight (Commerce Clause).[2]

An injunction is hereby entered ordering the Commission to grant Nextel's application for a special case permit within twenty (20) days. The Clerk of the Court is directed to enter judgment in Nextel's favor.

**SO ORDERED.**

---

**2.** We decline to rule on the merits of Counts Five and Six of Nextel's complaint alleging violations of sections 332(c)(3) and 253(a) of the Telecommunications Act because we find that Nextel is entitled to relief for the violations of section 332(c)(7), and neither section 332(c)(3) nor section 253(a) would provide Nextel with any relief different than that to which it is entitled under section 332(c)(7). Moreover, neither party addressed these claims in their summary judgment papers. For similar reasons, we decline to address the merits of Count Seven which asserts that the Commission frustrated the purpose behind the Telecommunications Act and the rules and regulations promulgated by the Federal Communications Commission.