**AT&T WIRELESS PCS, INC.,**
**Plaintiff–Appellant,**

v.

**CITY OF ATLANTA, et al.,**
**Defendants–Appellees.**

**No. 99–12261.**

United States Court of Appeals,
Eleventh Circuit.

April 26, 2000.

Rehearing and Rehearing En Banc
Denied June 15, 2000.

G. Wayne Hillis, Jr. and Erika C. Birg, Parker, Hudson, Rainer & Dobbs, Atlanta, GA, Carter G. Phillips, Sidley & Austin, Washington, DC, for Plaintiff–Appellant.

David D. Blum, City of Atlanta Law Dept., Atlanta, GA, for Defendants–Appellees.

Before CARNES, BARKETT and WILSON, Circuit Judges.

WILSON, Circuit Judge:

This case presents an issue of first impression in the circuit courts—whether the Telecommunications Act of 1996 (the TCA), 47 U.S.C. §§ 151 et seq., contains a comprehensive remedial scheme sufficient to preclude a separate action to enforce the TCA under 42 U.S.C. § 1983. AT&T Wireless PCS, Inc. ("AT&T Wireless") prevailed in a claim against the City of Atlanta ("the City") stemming from the City's violation of the TCA. AT&T Wireless additionally sought compensatory damages and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988. The district court held that violations of the TCA do not give rise to a cause of action under § 1983 (and, by extension, § 1988), because the TCA's remedial scheme is sufficiently comprehensive to imply congressional intent to foreclose

§ 1983 as a remedy. Because we find that Congress did not intend to foreclose § 1983 remedies, we vacate and remand.

## I. BACKGROUND

Appellant, AT&T Wireless, is licensed by the Federal Communications Commission to provide personal wireless services within the State of Georgia. It sought to provide personal wireless services within Atlanta. After receiving a special administrative permit from the City's Bureau of Planning, AT&T Wireless began making some structural improvements necessary for providing personal wireless services in Atlanta. Before AT&T Wireless could finish, the Bureau revoked the special administrative permit, explaining that AT&T Wireless needed a special use permit from the Atlanta City Council instead. AT&T Wireless applied to the City Council for the special use permit, but was rejected. The City Council did not give AT&T Wireless a written denial of the special use permit, nor was the denial supported by substantial evidence in a written record.

AT&T Wireless filed suit in district court pursuant to the TCA and 42 U.S.C. §§ 1983 and 1988.[1] AT&T Wireless sought a writ of mandamus compelling the City Council to grant AT&T Wireless's application, as well as seeking compensatory damages and attorney's fees. The district court found that the City violated a provision of the TCA that required the City to render its decision in writing supported by substantial evidence contained in a written record. See 47 U.S.C. § 332(c)(7)(B)(iii). Accordingly, the district court issued a writ of mandamus ordering the Atlanta City Council to grant AT&T Wireless's application. The court subsequently denied AT&T Wireless's motion for summary judgment on its §§ 1983 and 1988 claims, holding that §§ 1983 and 1988 may not be used to enforce the TCA.

AT&T Wireless appeals the denial of summary judgment on its claims for relief under §§ 1983 and 1988, arguing that the ruling was erroneous because TCA plaintiffs *can* use §§ 1983 and 1988 to enforce the TCA.[2]

## II. DISCUSSION

We review *de novo* the district court's denial of summary judgment based on its conclusion that plaintiff was not entitled to bring a § 1983 claim. See Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir.1997). We apply the same legal standards that the district court applied. See Brown v. Crawford, 906 F.2d 667, 669 (11th Cir.1990).

### A. The Telecommunications Act

Congress enacted the TCA in 1996 to "promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." Pub.L. No. 104–104, 110 Stat. 56 (1996). The TCA requires, *inter alia*, that "Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Requiring the governmental agency to deny requests in writing, and to demonstrate substantial evidence in a written record, guards against decision-making that fails to comport with the requirements of the statute, and ensures an adequate record is preserved for appeals. See Western PCS II Corp. v. Extraterritorial Zoning Auth., 957 F.Supp. 1230, 1236 (D.N.M.1997); AT&T Wireless Serv., Inc. v. Orange County, 982 F.Supp. 856, 860 (M.D.Fla.1997).

---

1. Section 1988 provides, "Attorney's fees. In any action or proceeding to enforce a provision of section[] ... 1983 ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs...." 42 U.S.C. § 1988(b).

2. AT&T Wireless argues alternatively that the TCA itself allows for compensatory damages. Because we determine that AT&T Wireless does qualify for § 1983 relief, we do not address whether the TCA itself provides for compensatory damages.

The validity of the district court's finding that Atlanta violated 47 U.S.C. § 332(c)(7)(B)(iii) is not before us on appeal. The only issue we must resolve is whether compensatory damages and attorney's fees are available to AT&T Wireless under §§ 1983 and 1988.

### B. Availability of § 1983 Damages[3]

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

■ Section 1983 historically provided remedies for violations of constitutional rights, but the Supreme Court has explicitly held that plaintiffs may also utilize the statute to remedy violations of federal statutes. *See Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (holding, "[T]he § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law."). Section 1983 remedies are not available in actions for violations of all federal statutes, however. To invoke § 1983, a plaintiff must meet two requirements. First, the

federal statute must create private rights enforceable under § 1983; second, the statute must not evidence congressional intent to foreclose a cause of action under § 1983. *See Blessing v. Freestone*, 520 U.S. 329, 340–41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).

### 1. Does the TCA Create a "Federal Right" for Purposes of § 1983?

■ A plaintiff seeking to bring suit pursuant to § 1983 must first establish that the statute involved gives rise to a "federal right." *Blessing* guides:

We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.

*Blessing*, 520 U.S. at 340–41, 117 S.Ct. 1353 (quoting *Wright v. City of Roanoke Redevelopment & Housing Auth.*, 479 U.S. 418, 431, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)) (internal citations omitted). Applying the three *Blessing* factors to the TCA, it is evident that the TCA gives rise to a federal right.[4]

---

**3.** AT&T Wireless seeks compensatory damages pursuant to § 1983 and attorney's fees under § 1988. Section 1988 relief is discretionarily available to plaintiffs for § 1983 actions. *See* 42 U.S.C. § 1988(b). Plaintiff will be discretionarily eligible for § 1988 relief if it can prove eligibility for § 1983 relief; thus our primary inquiry is whether § 1983 relief is available.

**4.** The district court noted that "all district courts heretofore addressing this question and applying these factors are in agreement that the [TCA] bestows federal rights upon personal wireless service providers." *AT&T*

*Wireless PCS, Inc. v. City of Atlanta*, 50 F.Supp.2d 1352, 1356 (N.D.Ga.1999). *See Omnipoint Communications, Inc. v. Penn Forest Township*, 42 F.Supp.2d 493, 503 (M.D.Pa. 1999); *Omnipoint Communications Enter., L.P. v. Newtown Township*, No. CIV. A. 98–5171 (E.D. Pa. April 29, 1999) (unpublished); *Smart SMR, Inc. v. Zoning Comm'n*, 995 F.Supp. 52, 61 (D.Conn.1998); *MCI Telecommunications Corp. v. Southern New England Tel. Co.*, 27 F.Supp.2d 326, 333–34 (D.Conn. 1998); *National Telecomm. Advisors, Inc. v. City of Chicopee*, 16 F.Supp.2d 117, 120–21 (D.Mass.1998); *Omnipoint Communications Enter., L.P. v. Zoning Hearing Bd. of Chadds*

Plaintiff must first demonstrate that Congress intended that the provision in question benefit the plaintiff. *See Blessing,* 520 U.S. at 340, 117 S.Ct. 1353. The TCA was enacted to remove "barriers to entry" in the telecommunications market and to "stimulate competition among telecommunications providers." *TCG Detroit v. City of Dearborn,* 977 F.Supp. 836, 839 (E.D.Mich.1997) (discussing 47 U.S.C. § 253). The TCA prohibits, *inter alia,* decision-making without rendering the decision in writing supported by substantial evidence contained in a written record. When the decision-makers violate the TCA, those adversely affected by the decisions are obviously the intended beneficiaries of the TCA. The TCA allows "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph" to "commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v). According to the plain meaning of the statute, AT&T Wireless, as the victim of an inadequately-justified decision, is an intended beneficiary.

Next, AT&T Wireless "must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence." *Blessing,* 520 U.S. at 340–41, 117 S.Ct. 1353 (quoting *Wright,* 479 U.S. at 431, 107 S.Ct. 766). The TCA's enforcement mechanism provides:

"Any person adversely affected ... may ... commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v). The language of § 332(c)(7)(B)(v) illustrates that the TCA already vests enforcement with the judiciary. The obvious inference is that Congress itself believed that the rights protected by the TCA are not so vague and amorphous as to strain judicial competence. We agree—the TCA imposes well-defined obligations on governmental entities. *See* 47 U.S.C. § 332(c)(7)(B)(iii). The judiciary is quite competent to enforce AT&T Wireless's § 332(c)(7)(B)(iii) right as guaranteed by the TCA.[5] The second *Blessing* factor is satisfied.

Finally, "the statute must unambiguously impose a binding obligation" on the governmental body in question. *Blessing,* 520 U.S. at 341, 117 S.Ct. 1353. This factor is easily satisfied. The TCA uses the term "shall," a mandatory rather than a precatory term, in reference to government obligations. For example, state or local governments "*shall* not unreasonably discriminate" among personal wireless service providers, "*shall* not prohibit or have the effect of prohibiting the provision of personal wireless services," and "*shall* [make any denial of requests to place, construct, or modify personal wireless service facilities] in writing and supported by substantial evidence contained in a written

---

*Ford Township,* No. CIV. A. 98–3299 (E.D.Pa. Oct. 28, 1998) (unpublished); *APT Minneapolis, Inc. v. City of Maplewood,* No. Civ. 97–2082 (D.Minn. Aug.12, 1998) (unpublished); *Sprint Spectrum, L.P. v. Town of Easton,* 982 F.Supp. 47, 53 (D.Mass.1997).

**5.** The right AT&T Wireless is enforcing is its right to receive a denial in a writing that is supported by substantial evidence contained in a written record. *See* 47 U.S.C. § 332(c)(7)(B)(iii). The judiciary has vast experience interpreting the term "substantial evidence." *See, e.g., American Iron and Steel Institute v. OSHA,* 182 F.3d 1261 (11th Cir. 1999) (determining whether OSHA's determinations were supported by substantial evidence in the record). District courts interpreting the TCA have held that the phrase "'substantial evidence contained in a written record' is the traditional standard used for judicial review of agency actions." *BellSouth Mobility, Inc. v. Gwinnett County,* 944 F.Supp. 923, 928 (N.D.Ga.1996); *see also AT&T Wireless PCS, Inc. v. City of Atlanta,* 50 F.Supp.2d 1352 (N.D.Ga. 1999) (unpublished); *Sprint Spectrum L.P. v. Jefferson County,* 968 F.Supp. 1457, 1468–69 (N.D.Ala. 1997); *Illinois RSA No. 3, Inc. v. County of Peoria,* 963 F.Supp. 732, 743 (C.D.Ill.1997). Additionally, the Supreme Court defines "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

record." 47 U.S.C. § 332(c)(7)(B)(i), (iii) (emphases added). There is no ambiguity here—the TCA imposes binding obligations on state and local governments. In short, the TCA satisfies all three prongs as described in *Blessing*, and plaintiffs are therefore enforcing a federal right.

### 2. Does the TCA Show Congressional Intent to Preclude a Separate Remedy Under § 1983?

 Once it is established that a statute creates a federal right, *"there is [ ] a rebuttable presumption that the right is enforceable under § 1983." Blessing,* 520 U.S. at 341, 117 S.Ct. 1353 (emphasis added). The presumption will be rebutted if "Congress 'specifically foreclosed a remedy under § 1983.' Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing,* 520 U.S. at 341, 117 S.Ct. 1353; *see also Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (holding, "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983....").

The City of Atlanta carries the burden of rebutting the presumptive availability of § 1983 remedies, since AT&T Wireless succeeded in demonstrating that a federal right is involved. *See Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 107, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) (holding, "The burden to demonstrate that Congress has expressly withdrawn the [§ 1983] remedy is on the defendant."). Congress did not expressly foreclose § 1983 remedies anywhere in the TCA. The City therefore has tried to demonstrate that Congress impliedly foreclosed the remedy by creating a sufficiently comprehensive remedial scheme in the TCA. The City argues that the TCA provides a simple, yet comprehensive remedial scheme: expedited judicial review pursuant to 47 U.S.C. § 332(c)(7)(B)(v).[6]

 We need not decide whether expedited judicial review constitutes a comprehensive remedial scheme,[7] for a plain reading of the statute reveals Congress's intent to leave § 1983 undisturbed.

We recently held, "Interpretation of a statute begins 'with the language of the statute itself.' As a general rule, if the language of the statute is plain, then our interpretative function ceases and we should 'enforce [the statute] according to its terms.'" *Griffith v. United States (In re Griffith),* 206 F.3d 1389, (11th Cir.2000)

---

6. The TCA provides:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.
>
> 47 U.S.C. § 332(c)(7)(B)(v).

7. We recognize that there is a split among the district courts about whether the TCA provides a comprehensive remedial scheme supplanting § 1983. Courts holding that the TCA's remedial scheme does not supplant § 1983 include: *MCI Telecommunications,* 27 F.Supp.2d at 334; *Cellco Partnership v. Town Plan & Zoning Comm'n,* 3 F.Supp.2d 178, 186 (D.Conn.1998); *Smart SMR,* 995 F.Supp. at 60–61; *Chadds Ford Township,* No. CIV. A. 98–3299; *APT Minneapolis,* No. Civ. 97–2082; and *Sprint Spectrum,* 982 F.Supp. at 53. Courts holding that the TCA's remedial scheme does supplant § 1983 include: *Omnipoint Communications Enter., L.P. v. Charlestown Township,* No. CIV. A. 98–CV–6563 (E.D.Pa. Jan. 21, 2000); *Omnipoint Communications Enter., L.P. v. Zoning Hearing Bd. of Easttown Township,* 72 F.Supp.2d 512, 517 (E.D.Pa.1999); *Penn Forest Township,* 42 F.Supp.2d at 502–07; *Newtown Township,* No. CIV. A. 98–5171; and *City of Chicopee,* 16 F.Supp.2d at 122–23. This debate is irrelevant in light of Congress's expressed intent.

(en banc) (quoting *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (internal citations omitted)). As stated by Justice Stevens, "No matter how comprehensive we may consider a statute's remedial scheme to be, Congress is at liberty to leave other remedial avenues open. Express statutory language or clear references in the legislative history will rebut whatever presumption of exclusivity arises from comprehensive remedial provisions." *Sea Clammers*, 453 U.S. at 28, 101 S.Ct. 2615 (Stevens, J., dissenting in part); *see also Smith v. Robinson*, 468 U.S. 992, 1012 n. 16, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (supporting proposition that "Congress' intent is controlling" on availability of § 1983 remedies) (superseded by statute as stated in *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995)).

The TCA includes the following provision:

> *No implied effect. This Act and the amendments made by this Act shall not be construed to modify, impair, or supersede Federal, state, or local law unless expressly so provided in such Act or amendments.*

Pub.L. No. 104–104, § 601(c)(1), 110 Stat. 143 (1996) (reprinted in 47 U.S.C. § 152, historical and statutory notes) (emphasis added) (hereinafter "§ 601(c)(1)").[8] This language is dispositive. We recognize that the district court believed that § 601(c)(1) "sheds little light" on Congress's intent. *See AT&T Wireless*, 50 F.Supp.2d at 1358. We disagree. The public law enacted by Congress clearly forbids us from construing the TCA to "modify, impair, or supersede" other laws, including § 1983. We will not second guess the plain meaning of this language. *See* In re *Griffith*, 206 F.3d at 1394.

We also recognize that the Supreme Court has found specific "savings clauses" not indicative of congressional intent regarding § 1983 actions. In *Sea Clammers*, the Court found no congressional intent to preserve § 1983 remedies, despite savings clause language in two separate acts: the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. §§ 1251 et seq.; and the Marine Protection Research, and Sanctuaries Act of 1972 (MPRSA), 33 U.S.C. §§ 1401 et seq. The FWPCA provided, "Nothing in this section shall restrict any right which any person ... may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief...." 33 U.S.C. § 1365(e). The MPRSA similarly provided, "The injunctive relief provided by this subsection shall not restrict any right which any person ... may have under any statute or common law to seek enforcement of any standard or limitation or to seek any other relief...." 33 U.S.C. § 1415(g)(5). The Court discounted the savings clause language because legislative history clearly revealed that Congress intended to preserve further enforcement of specific antipollution standards only. *See Sea Clammers*, 453 U.S. at 21 n. 31, 101 S.Ct. 2615.

This is not a situation, as with the *Sea Clammers* statutes, where Congress intended to preserve only a specific type of state or local redress—such as antipollution standards enforcement. Rather, in this case, the savings clause language of § 601(c)(1) means what it says: the TCA shall not be construed to have any implied effect on *any* other federal laws. The legislative history reveals no contrary meaning.[9]

---

8. Section 601(c)(1), although not codified in § 152 itself, was enacted into law and is binding authority. *See generally United States v. Gilbert*, 198 F.3d 1293 (11th Cir.1999) (discussing the Hyde Amendment, Pub.L. No. 105–119, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes)).

9. Legislative history makes clear that "Section 601(c) precludes any party from arguing that the 1996 Act modifies, impairs, or supersedes *any* existing federal ... law by implication. The Act is to be construed as modifying an existing law *only when it expressly so states.*" Robert E. Emeritz et al., *The Telecommunications Act of 1996 Law & Legislative History* 54 (1996) (emphasis added).

The legislative history does reveal that the TCA drafters were concerned with the possibility that the TCA could be construed to have implied effects on other laws—and took pains to show their intent with three separate provisions. First, Congress created a savings clause solely for antitrust laws, mandating that except where noted, nothing in the TCA modifies, impairs, or supersedes antitrust laws; *see* Pub.L. No. 104–104, § 601(b)(1), 110 Stat. 143 (1996) (reprinted in 47 U.S.C. § 152, historical and statutory notes) (hereinafter "§ 601(b)(1)").[10] Second, Congress created the "[n]o implied effect" provision under scrutiny here. Third, Congress created a state and local tax savings provision, mandating that except where noted, the TCA does not modify, impair, or supercede state or local tax laws. *See* Pub.L. No. 104–104, § 601(c)(2), 110 Stat. 143 (1996) (reprinted in 47 U.S.C. § 152, historical and statutory notes) (hereinafter "§ 601(c)(2)").[11]

Congress carved out separate antitrust and tax law savings clauses to elucidate an otherwise confusing interplay of code sections unique to those laws. For example, § 602(a) provides, "A provider of direct-to-home satellite service shall be exempt from the collection or remittance, or both, of any tax or fee imposed by any local taxing jurisdiction on direct-to-home satellite service." Pub.L. No. 104–104, § 602(a), 110 Stat. 144 (1996) (reprinted in 47 U.S.C. § 152, historical and statutory notes) (hereinafter "§ 602(a)"). Section 601(c)(2) makes clear that the TCA's broad savings clause (§ 601(c)(1)) does not displace § 602(a). Thus, direct-to-home satellite providers are exempt from local tax

laws pursuant to § 602(a), despite § 601(c)(1)'s protection of local laws. Section 601(c)(2) alleviates any confusion regarding the intersection of the statutes.

As with tax laws, the TCA created a potentially confusing statutory overlap with antitrust laws. Section 601(b) minimizes the potential confusion. Section 601(b) eliminated a portion of the 1934 Communications Act, 47 U.S.C. § 221(a) (in part), and correspondingly amended Section 7 of the Clayton Act. Section 221(a) had given the FCC "the power to override '*any* Act or Acts of Congress.'" Emeritz et al., *The Telecommunications Act of 1996 Law & Legislative History* at 54 (1996) (quoting 47 U.S.C. § 221(a)). As a result:

> "The Conference Report expresses Congressional concern that Section 221(a) might be invoked by companies seeking to avoid application of provisions in the 1996 Act.... Elimination of Section 221(a) ... ensures that mergers of telecommunications giants in the new regulatory landscape will undergo antitrust review under the Hart–Scott–Rodino Act."

*Id.* Section 601(b) thus serves to "take away the FCC's power to confer antitrust immunity on mergers of telephone companies." *Id.*

While Congress could have specifically preserved § 1983 remedies in a separate provision of the TCA, similar to the separate provisions for antitrust and tax treatment, Congress was not obligated to do so. Nothing in the TCA potentially conflicts with § 1983 (as opposed to tax and antitrust laws), such that Congress needed to

---

**10.** Section 601(b)(1) provides, "Except as provided in paragraphs (2) and (3), nothing in this Act or the amendments made by this Act shall be construed to modify, impair, or supersede the applicability of any of the antitrust laws." Pub.L. No. 104–104, § 601(b)(1), 110 Stat. 143 (1996) (reprinted in 47 U.S.C. § 152, historical and statutory notes).

**11.** Section 601(c)(2) provides:
Notwithstanding paragraph (1) [the "[n]o implied effect" clause], nothing in this Act

or the amendments made by this Act shall be construed to modify, impair, or supersede, or authorize the modification, impairment, or supersession of, any State or local law pertaining to taxation, except as provided in sections 622 and 653(c) of the Communications Act of 1934 and section 602 of this Act.
Pub.L. No. 104–104, § 601(c)(2), 110 Stat. 143 (1996) (reprinted in 47 U.S.C. § 152, historical and statutory notes).

provide a roadmap for interpreting contradictory statutes. Congress need not create exhaustive lists when simple language such as "any federal law" should plainly suffice. Section 601(c)(1) preserves all federal causes of action, unless expressly excluded elsewhere in the TCA. Because Congress did not expressly exclude § 1983 remedies from the TCA plaintiff's arsenal, § 1983 actions are not so excluded.

The City of Atlanta carried the burden of proving that Congress intended to foreclose § 1983 remedies; the City simply did not meet its burden of proof. Supreme Court precedent makes clear that a rebuttable presumption favors *allowing* § 1983 actions when a plaintiff establishes that an Act creates a federal right. *See Blessing*, 520 U.S. at 341, 117 S.Ct. 1353. Given this presumption, and in the face of Congress's explicit direction that the TCA shall have "[n]o implied effect" on other laws, we cannot conclude that the City of Atlanta has made " 'the difficult showing that allowing § 1983 actions to go forward in these circumstances "would be inconsistent with Congress" carefully tailored scheme.' " *Blessing*, 520 U.S. at 346, 117 S.Ct. 1353 (quoting *Golden State*, 493 U.S. at 107, 110 S.Ct. 444). We must therefore vacate the district court's judgment and remand this case for further proceedings consistent with this opinion.

### III. CONCLUSION

The district court erred in concluding that § 1983 remedies are unavailable to AT&T Wireless. AT&T Wireless's summary judgment motion must be evaluated on its merits. We vacate the denial of summary judgment, and remand the case for reconsideration in light of this opinion.

VACATED AND REMANDED.

CARNES, Circuit Judge, concurring specially:

I concur in Judge Wilson's opinion for the Court, because he has laid out the controlling law and applied it to this case in the way required by precedent. I write separately only to note in passing how far we have come from the original purposes of the attorney fee shifting provision that is 42 U.S.C. § 1988. In discussing the policy considerations underlying that provision, we have observed that its "primary function is to shift the costs of civil rights litigation from civil rights victims to civil rights violators." *Jonas v. Stack*, 758 F.2d 567, 569 (11th Cir.1985). We have explained that the legislative history behind § 1988 shows two justifications for it: "First, the mechanism affords civil rights victims effective access to the courts by making it financially feasible for them to challenge civil rights violations. Second, it provides an incentive for both citizens and members of the bar to act as 'private attorneys general' to ensure effective enforcement of the civil rights law." *Id.* (citations omitted).

AT&T Wireless is no civil rights victim, at least not in the traditional sense of that term. Nor do corporations like AT&T Wireless need reimbursement of attorney fees to make it financially feasible for them to challenge in court regulatory denials that cost them money. Their financial self-interest and the vast sums at stake make them more than happy to serve as "private attorneys general" to enforce the legislative measures that they have lobbied through Congress, without the need for taxpayers to pay their litigation costs. Section 1988 was intended to help the civil rights Davids of the world do battle with the governmental Goliaths. AT&T Wireless is a seven-billion dollar subsidiary of a sixty-two billion dollar multi-national corporation.[1] My, how the Davids have grown.

---

1. These are 1999 revenue figures for AT&T Wireless and AT&T. *See* <http://www.att.com>