NATIONAL TELECOMMUNICATION ADVISORS, INC., Plaintiff,

v.

CITY OF CHICOPEE, et al., Defendants.

Civil Action No. 97–30228–MAP.

United States District Court,
D. Massachusetts.

Aug. 11, 1998.

William P. Hadley, Doherty, Wallace, Pillsbury & Murphy, Springfield, MA, for Plaintiff.

William J. O'Grady, Chicopee Law Department, Asst. City Solicitor, Chicopee, MA, for Defendants.

## MEMORANDUM REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT III

PONSOR, District Judge.

### I. INTRODUCTION

In February 1997, plaintiff, National Telecommunication Advisors, Inc. ("NTA"), re-

quested a special permit from the Board of Aldermen for the City of Chicopee ("the Board") to construct a multi-carrier, personal wireless communication tower in the city of Chicopee ("City"). On October 7, 1997, the Board denied NTA's application. A handwritten note on the denial notice announced the result of the vote and stated that the Board wanted to save the site for "true industrial use."

On October 15, 1997 NTA appealed the Board's decision to this court. In Count I, pursuant to the Telecommunications Act of 1996 ("TCA"), NTA sought an injunction and order of mandamus directing the Commissioner of Buildings for the City to issue a building permit for the site. Count II, also citing the TCA, sought an injunction and order of mandamus directing defendants to approve NTA's application for a special permit for the site. Count III, under 42 U.S.C. § 1983 (1994), demanded an award of compensatory and punitive damages and attorneys' fees against the individual defendants for violations of NTA's federal and state constitutional rights.

Pursuant to the TCA's mandate that claims be heard on an expedited basis, the court scheduled a hearing for October 23, 1997. Prior to the hearing, however, the parties reached settlement. On October 23, 1997, as part of the settlement agreement, this court signed an order finding that the decision to deny NTA's request to place and construct a personal wireless service tower in Chicopee was not supported by substantial evidence contained in a written record as required by the TCA. Because the defendants' actions had the effect of prohibiting the provision of personal wireless services in violation of the TCA, this court—again, by agreement—allowed NTA's requests for injunctive relief and for an order of mandamus, and required the City's Commissioner of Buildings to grant a special permit to NTA. With these rulings, made pursuant to the parties settlement, this court found in favor of plaintiff on its claims in Counts I & II under the Telecommunications Act of 1996.

Now before the court is NTA's Motion for Summary Judgment on Count III, under 42 U.S.C. § 1983, charging that the City violat-

ed NTA's civil rights by failing to comply with the TCA. As a practical matter, plaintiff has pressed his claim in Count III to recoup attorney's fees. The TCA has no provision for fees. No demand for other damages is made.

For the reasons set forth below, the court will DENY plaintiff's Motion for Summary Judgment on its civil rights claim. In summary, under the Supreme Court's holding in *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 1360, 137 L.Ed.2d 569 (1997), the court must conclude that the TCA is a comprehensive enforcement mechanism that implicitly precludes the availability of a remedy under § 1983. As a result, plaintiff is not entitled to attorneys' fees under 42 U.S.C. § 1988.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Here the nonmoving parties agree there are no material facts in dispute. They accept the facts presented by the plaintiff, but challenge plaintiff's entitlement to judgment as a matter of law on Count III.

## III. FACTS

In 1996, NTA began working with the City to develop appropriate locations for communication facilities and voluntarily assisted the City in revising its zoning ordinance to address concerns about the growing pressure for wireless communication. The City's zoning ordinance, Chapter 275, requires communication carriers to obtain a special permit from the Board of Alderman to construct multi-carrier personal wireless communication towers. In February 1997 NTA submitted to the Board an application to construct a personal wireless communication tower on an industrial site within the city.

On October 7, 1997, after numerous board meetings, and a recommendation by the Board's zoning committee that NTA's application be denied, the Board denied NTA's

application by a vote of six to four. The only written record of the Board's reasoning was a handwritten note, stating that some members wanted to keep the site available for "true industrial use." As noted, the appeal of this decision led to a settlement on October 23, 1997.

As part of the written settlement, NTA and the City agreed to certain terms that were subsequently incorporated into the court's order. First, they agreed that the decision to deny NTA's request to place and construct a personal wireless service facility in Chicopee was not supported by substantial evidence contained in a written record as required by the TCA; on the contrary, the record supported the approval of NTA's application. Second, the parties agreed that the defendants' actions had the effect of prohibiting the provision of personal wireless services in violation of the TCA. Third, they agreed that this court, invoking its equitable powers, should allow NTA's request for injunctive relief and an order of mandamus, as set forth in Counts I & II, and both require the Board to approve NTA's application and order the Commissioner of Buildings to grant a special permit to NTA.

On December 12, 1997, on the basis of its success in Counts I and II, NTA moved for summary judgement on Count III of its complaint, the civil rights claim.

### IV. DISCUSSION

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that, at least in some circumstances, § 1983 is available to enforce violations of federal statutes and that § 1983 remedies are not limited to statutes

enacted pursuant to the civil rights or equal protection provisions of the Constitution. *Id.* at 6, 100 S.Ct. 2502.

Subsequently, the Court addressed the question of *when* a § 1983 remedy is appropriate for violations of a federal statutory right, identifying two primary considerations. First, plaintiff must "assert the violation of a federal right, not merely a violation of federal law." *Blessing,* 117 S.Ct. at 1359. Second, the plaintiff must show that, in enacting the statute at issue, Congress did *not* create an enforcement mechanism sufficiently comprehensive to demonstrate Congressional intent to preclude a § 1983 remedy. *Id.* at 1362. Application of these factors requires, first, a careful examination of the TCA.

### A. The Telecommunications Act of 1996

The Telecommunications Act of 1996 ("TCA"), 47 U.S.C. §§ 151 *et seq.,* was enacted to "encourage the rapid deployment of new telecommunications technologies." *Reno v. American Civil Liberties Union,* 521 U.S. 844, ——, 117 S.Ct. 2329, 2337, 138 L.Ed.2d 874 (1997). Included within the TCA are provisions concerning the development of competitive markets, Bell operating companies, broadcast services, cable services, regulatory reform and the control of obscenity and violence. Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56 (codified as amended at 47 U.S.C. §§ 151 *et seq.*).

The statute imposes obligations on local zoning authorities to foster the rapid development of this fast-growing field of communication technology. For example, it prohibits discrimination among providers, 47 U.S.C. § 332(c)(7)(B)(i)(I), and requires local authorities to provide applicants with adequate written notice of reasons for denial of necessary permits. 47 U.S.C. § 332(c)(7)(B)(iii).

Plaintiff has succeeded in proving that the City's denial of NTA's application violated two of the statute's provisions. First, the TCA provides:

Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in

writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B)(iii). Second, concerning the power of local authorities generally, the TCA states:

> The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—...
>
> (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B)(i)(II).

Plaintiff's success does not, by itself, entitle it to attorneys' fees, since as noted above the TCA does not contain an attorney's fee provision. At least one court, in considering whether attorneys' fees are available directly under the TCA, has explicitly held that, absent a showing of bad faith, fees are not available to a prevailing party. *Virginia Metronet v. Bd. of Supervisors,* 984 F.Supp. 966, 977 (E.D.Va.1998).

■ In order to qualify for an award of attorneys' fees, therefore, plaintiff must prove, first, that defendants' violations of the TCA rose to the level of a violation of a federal right, not merely a federal law and, second, that the TCA's remedial scheme is insufficiently comprehensive to supplant § 1983. *Blessing,* 117 S.Ct. at 1359.

### B. The Telecommunications Act of 1996: Federal Right or Federal Law?

■ In *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), the Court held that "[i]n order to seek redress through § 1983, ... a plaintiff must assert the violation of a federal right, not merely a violation of federal law." *Id.* at 1359 (citing *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)). In determining whether a particular statutory provision rises to the level of a federal right, the court must consider three factors: first, "whether the provision in question creates obligations binding on the governmental unit or rather 'does no more than express a Congressional preference for certain kinds of treatment,'" *Golden State,* 493 U.S. at 106,

110 S.Ct. 444 (quoting *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 19, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)); second, whether the interest plaintiff asserts is "too vague and amorphous" to be "beyond the competence of the judiciary to enforce," *Golden State,* 493 U.S. at 106, 110 S.Ct. 444 (citations omitted); and, third, "whether the provision in question was intended to benefit the putative plaintiff." *Id.* (citations omitted).

The plain language of the TCA makes the requirement of written findings and the prohibition against regulations that prohibit the provision of wireless services binding on the defendants. No interpretation of the statute could colorably suggest that this language merely expressed a "Congressional preference." The first factor of the *Golden State* test, therefore, has been satisfied.

Regarding the second factor, the TCA gives courts power to review decisions of local zoning authorities on an expedited basis. 47 U.S.C. § 332(c)(7)(B)(v). The TCA's judicial review section provides:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

*Id.* Moreover, the legislative history accompanying this section states that "[t]he phrase 'substantial evidence contained in a written record' is the traditional standard used for judicial review of agency actions." H.R.Conf.Rep. No. 104–458, at 208 (1995), *reprinted in* 1996 U.S.C.C.A.N. 124, 223. Obviously, the assumption by Congress in enacting the statute was emphatically not that the plaintiff's interest is "beyond the competence of the judiciary to enforce." Clearly, the second *Golden State* factor is satisfied.

Finally, regarding the third factor, the primary purpose of the TCA is to reduce regulation and "encourage the rapid deployment of new telecommunications technologies."

*Reno,* 117 S.Ct. at 2337. Specifically, 47 U.S.C. § 332(c)(7) addresses the regulation, construction and modification of personal wireless service facilities and sets out specific requirements that state and local governments must follow when considering requests to construct personal wireless service facilities. As a company that sought defendants' permission to construct such a facility, NTA understandably expected that the defendants would comply with the requirements of the TCA. This court's October 23, 1997 order memorializes the conclusion that, as a matter of law, defendants failed to do this. Since NTA is precisely the sort of plaintiff the TCA was intended to benefit, *Golden State*'s third factor is satisfied.

Having concluded that the protections afforded by the TCA do bestow a "federal right," the court must turn to the second question: is the TCA's remedial scheme sufficiently comprehensive to permit this court to conclude that Congress meant to preclude a § 1983 remedy?

### C. *The Telecommunications Act of 1996: a Comprehensive Enforcement Mechanism?*

■ Congress may evidence its intent to supplant a § 1983 remedy in two ways. First, Congress may say so explicitly in the statute. Second, Congress may do so implicitly by creating within the statute itself a comprehensive enforcement mechanism that is incompatible with enforcement via § 1983. *Blessing,* 117 S.Ct. at 1360. In a series of cases, the Supreme Court has provided guidance regarding when a federal statute is sufficiently comprehensive to evidence congressional intent to supplant a remedy under § 1983.

In the seminal case of *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n.,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the Court analyzed the Federal Water Pollution Control Act ("FWPCA") and the Marine Protection, Research, and Sanctuaries Act of 1972 ("MPRSA"). *Id.* at 20–21, 101 S.Ct. 2615. Under the FWPCA, certain levels of waste discharge, without a permit, are prohibited. *Id.* at 11, 101 S.Ct. 2615. Similarly, the MPRSA restricts the dumping of waste into coastal waters, through the issuance of permits for such activity. *Id.* at 12, 101 S.Ct. 2615. Both statutes contain enforcement provisions that give government officials and private citizens authority to sue. *Id.* at 13, 101 S.Ct. 2615. Moreover, both statutes provide injunctive citizen-suit provisions. *Id.* at 14, 101 S.Ct. 2615.

In concluding that the FWPCA and MPRSA *are* comprehensive enforcement schemes, the Court found significant the various express remedies both statutes provide litigants, including citizen-suit provisions. *Id.* For this reason, the Court concluded that by enacting the FWPCA and MPRSA Congress intended to supplant any remedy that otherwise would be available under § 1983. *Id.* at 21, 101 S.Ct. 2615.

In *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Court considered the Education for All Handicapped Children Act ("EHA"). The EHA sets up a multi-layered system of checks and balances to ensure that handicapped children's rights to a "free appropriate public education" are honored. *Id.* at 1009, 104 S.Ct. 3457. To receive federal monies, states must comply with the EHA.

The Court held that the EHA is a comprehensive enforcement scheme, again because Congress clearly intended that parents employ the detailed, comprehensive, administrative procedures set forth in the EHA, not the much broader provisions of § 1983. *Id.* at 1012, 104 S.Ct. 3457. Any other conclusion "would be inconsistent with Congress' carefully tailored scheme" and contrary to the statute's legislative history. *Id.*

By contrast, in *Blessing,* 117 S.Ct. at 1363, the Court determined that Title IV–D of the Social Security Act ("Title IV"), is not a sufficiently comprehensive enforcement scheme to supplant § 1983. Title IV creates compliance provisions for States receiving federal Aid to Families with Dependent Children ("AFDC"). To receive federal monies under Title IV, states must certify that they meet certain criteria.

In reaching its conclusion, the Court found significant the fact that, unlike the statutes

at issue in *Smith* or *Sea Clammers*, Title IV contains *no* private judicial or administrative remedy by which aggrieved individuals may seek equitable relief or damages. *Id.* Instead, under Title IV, the Secretary of Health and Human Services is charged with enforcement of the provisions. *Id.* Although the court noted that a private individual might have standing to try to compel the *Secretary* to enforce Title IV, the Court concluded that this possibility did not render Title IV a comprehensive enforcement scheme. *Id.*

In two cases, the Court of Appeals for the First Circuit also reached the conclusion that a statute contained a sufficiently comprehensive remedial scheme to foreclose a § 1983 action. In *Garcia v. Cecos International, Inc.*, 761 F.2d 76 (1st Cir.1985), the court concluded that the Resource Conservation and Recovery Act ("RCRA"), an environmental law that closely resembles the remedial schemes at issue in *Sea Clammers*, was sufficiently comprehensive to preclude a cause of action under § 1983. *Garcia*, 761 F.2d at 83.

Similarly, in *Mattoon v. City of Pittsfield*, 980 F.2d 1 (1st Cir.1992), the court held that the Safe Drinking Water Act ("SDWA") is a comprehensive enforcement scheme that precludes a right of action under § 1983. *Id.* at 6. Particularly relevant to the court's conclusion was the fact that the SDWA establishes an elaborate enforcement scheme that confers a right of action on both the government *and* private citizens. *Id.* at 5.

■ Although the path is by no means free of brambles, these authorities do mark a passage to only one conclusion: a § 1983 action is not available to obtain a remedy for violation of the TCA for the following reasons

First, the statute provides a clear, detailed process that allows quick and complete remedies for individuals improperly denied permission to erect a personal wireless communication tower. Given this carefully drafted provision, and the absence of any indicia of contrary congressional intent, it is manifest that Congress provided precisely the remedies it considered appropriate when drafting the TCA. Given that litigation under the TCA will inevitably be directed, from time to time,

at relatively unsophisticated, small or remote townships, the absence of any provision for fees in the TCA is telling.

Second, this case bears strong resemblance to *Smith* and *Sea Clammers*. In both cases the statute at issue expressly allowed judicial review of either the decision made at the hearing, *Smith*, 468 U.S. at 1009, 104 S.Ct. 3457, or of the Administrator's actions, *Sea Clammers*, 453 U.S. at 20–21, 101 S.Ct. 2615. Here, a private cause of action and expedited judicial review is mandated.

Third, the statutory structure of the TCA is the same in significant respects as the framework of the two statutes the First Circuit has already held to constitute comprehensive remedial schemes for purposes of § 1983 preclusion. As with the RCRA in *Garcia*, the "numerous and elaborate statutory provisions relating to enforcement" preclude the need for a remedy under § 1983. *Garcia*, 761 F.2d at 83. And, as in *Mattoon*, where the Court of Appeals emphasized the fact that injured parties had a right to bring a private action under the SDWA, 980 F.2d at 6, private parties have a similar right under the TCA to seek immediate court relief. Moreover, while the private remedy for SDWA violations must be sought in the Court of Appeals for the District of Columbia, TCA litigants may seek relief in a local district court, and their hearing must be expedited. The significance of this private remedial mechanism was underlined in the Supreme Court's *Blessing* decision, where the Court justified the recognition of a § 1983 remedy by noting the absence of any private right of action under Title IV.

Fourth, the comprehensiveness of the TCA's remedial scheme is perhaps best evidenced by the fact that the § 1983 statutory apparatus adds *nothing* to plaintiff's remedial armament under the TCA—except the opportunity to seek attorney's fees under § 1988. In other words, plaintiff has tacked Count III onto its complaint merely for fees. While the desire to recoup fees is understandable, the use of § 1983 in such a way trivializes this important statute and is incon-

sistent with its intent.[1]

It is worth noting that the actions of the defendants here did not constitute flagrant or protracted violations of NTA's legal rights. The October 23, 1997 settlement agreement and order found only that the written record accompanying the Board's decision did not support the denial of NTA's application for a special permit. It is possible that, but for the failure to compile a proper written record, as required by the TCA, the Board's decision may have been entirely supportable. When the lawsuit was brought, underlining the Board's lapse, a settlement was quickly reached and the permit issued. Particularly given the recent vintage of the statute, and the inevitable awkwardness small municipalities may experience in adjusting to its requirements, the conduct of Chicopee's Board of Aldermen could hardly be called contumacious.

## V. CONCLUSION

For the foregoing reasons, NTA's motion for summary judgment on Count III, its civil rights claim, is hereby DENIED. Given this ruling, the court will give plaintiff ten days to submit a memorandum showing cause why judgment for defendants should not enter on Count III. If no cause is shown, the court will order entry of judgment for plaintiff on Counts I and II and for defendants on Count III.

---

1. In reaching this decision, the court is aware that its holding may be viewed as inconsistent with *Sprint Spectrum L.P. v. Town of Easton*, 982 F.Supp. 47 (D.Mass.1997). There the district court stated, without extended analysis, that "the TCA does not provide a comprehensive enforcement scheme intended to supplant a § 1983 remedy." *Id.*, at 53. Factual differences may make that case distinguishable (it does not address the question of attorney's fees), but, if not, this court respectfully disagrees with that aspect of the *Sprint Spectrum* holding.