**AT & T WIRELESS PCS, INC., Plaintiffs,**

v.

**CITY OF ATLANTA, et al., Defendants.**

**No. Civ.A. 1:98–CV–0962–JEC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

June 14, 1999.

George Wayne Hillis, Erika C. Birg, Parker, Hudson, Rainer & Dobbs, Atlanta, GA, for plaintiffs.

David Blum, Clifford E. Hardwick, Michael H. Hilliard, Office of City Attorney, Law Department, Atlanta, GA, for defendants.

### ORDER

CARNES, District Judge.

This case is presently before the Court on plaintiff's Motion for Partial Summary Judgment on its Damages Claim Under Section 704 of the Telecommunications Act of 1996[31] and plaintiff's Motion for Partial Summary Judgment on its Claims for Relief Under 42 U.S.C. §§ 1983 and 1988[32]. The Court has reviewed the rec-

ord and the arguments of the parties and, for the reasons set out below, concludes that each of plaintiff's motions should be **DENIED.** Additionally, plaintiff's Motion to Strike and Notice of Objection to Settlement Evidence [35] is **GRANTED.**

### BACKGROUND

Plaintiff AT & T Wireless filed this action on April 1, 1998, challenging the Atlanta City Council's denial of its special use application and seeking expedited relief under the Telecommunications Act of 1996. On October 7, 1998, the Court found that the Atlanta City Council violated the Telecommunications Act, section 332(c)(7)(B)(iii), by failing to render its decision in writing supported by substantial evidence contained in a written record. Specifically, the Court found that the City Council's denial of plaintiff's application to install onto an existing tower certain antennas necessary for plaintiff to provide personal wireless services in Atlanta was improper because the written record supported approval of plaintiff's application. (Order [26] at 34.) The Court therefore entered a writ of mandamus requiring that the City Council approve plaintiff's special use application. (Order [26] at 36–38.)

At that time, the Court denied without prejudice plaintiff's request for summary judgment on its claims for relief under 42 U.S.C. §§ 1983 and 1988 because plaintiff was not entitled to expedited review of its civil rights claims. Plaintiff has renewed its motion for summary judgment on its claim for compensatory damages under section 1983 and for attorney's fees under section 1988. (Pl.'s Mot. for Partial Summ. J. [32].) In the alternative, plaintiff claims that it is entitled to damages under 47 U.S.C. § 332(c)(7) of the Telecommunications Act. (Pl.'s Mot. for Partial Summ. J. [32].)

### DISCUSSION

#### 1. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. 2505.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. 2548. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is,

pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleading" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. PLAINTIFF'S CLAIMS UNDER SECTIONS 1983 AND 1988

Plaintiff claims that defendants' violation of the Telecommunications Act gives rise to an action for damages to compensate it for its lost profits and other losses resulting from the City's improper denial of its special use permit application and for attorney's fees pursuant to 42 U.S.C. §§ 1983 [1] and 1988.[2] This is a case of first impression in this Circuit and, in fact, no Circuit Court of Appeals has yet addressed the question of whether a plaintiff may seek redress under section 1983 for a violation of the 1996 Telecommunications Act. The district courts which have addressed

---

1. Section 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1998).

2. Section 1988 provides in relevant part:
 In any action or proceeding to enforce a provision of section … 1983 …, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 42 U.S.C. § 1988 (1998).

the issue are divided, though fewer district courts have determined that a plaintiff can not invoke the protection of § 1983.

Until the Supreme Court's 1980 decision in *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), § 1983 was used primarily to secure remedies for violations of constitutional rights. In *Thiboutot*, the Supreme Court declared that § 1983 provides a remedy for violations of rights secured by federal statutes as well.[3] The Supreme Court quickly limited *Thiboutot* in a pair of 1981 decisions. *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), and *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

■ As a result, in order for a cause of action under § 1983 to exist for the violation of a federal statute, two requirements must be met. First, the federal statute must create private rights enforceable under § 1983. *Pennhurst*, 451 U.S. at 28, 101 S.Ct. 1531. That is, the plaintiff must assert a violation of a federal right, not merely a violation of federal law. *Blessing*

*v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). Second, even if a federal statute confers a substantive right, a § 1983 suit will not lie if Congress intended to foreclose a remedy under § 1983. *Sea Clammers*, 453 U.S. at 19–20, 101 S.Ct. 2615. "Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing*, 520 U.S. at 341, 117 S.Ct. 1353.[4] The Supreme Court has emphasized, however, that a court should not "lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy" for the deprivation of a federally secured right. *Smith v. Robinson*, 468 U.S. 992, 1012, 104 S.Ct. 3457, 82 L:Ed.2d 746 (1984).

### A. Whether the Telecommunications Act Creates a Federal Right

■ The Court must first determine whether the Telecommunications Act creates a federal right. Traditionally, the Supreme Court has looked at three factors when determining whether a particular statutory provision gives rise to a federal

---

**3.** In *Thiboutot*, the Supreme Court read the language of § 1983, which allows a right of action for the deprivation of any rights "secured by the Constitution *and laws*," to include violations of rights secured by federal statute. In his dissent, Justice Powell, joined by Chief Justice Burger and Justice Rehnquist, argued vehemently that Congress had not intended to provide a new remedy for violations of all federal statutes—or, for that matter, recovery of attorney's fees—and that such an expansive reading of the statute would have far-reaching effects. *Thiboutot*, 448 U.S. at 11–12, 100 S.Ct. 2502 (Powell, J., dissenting). He expressed concern that this holding would "dramatically expand the liability of state and local officials" and might "virtually eliminate the 'American Rule' in suits against those officials." *Id.* at 12, 100 S.Ct. 2502. Justice Powell further noted that § 1983 claims were already being "appended to complaints solely for the purpose of obtaining fees in actions where 'civil rights' of any kind are at best an afterthought." *Id.* at 11–

12, 24, 100 S.Ct. 2502. He concluded that the majority's decision "significantly expands the concept of 'civil rights' and creates a major new intrusion into state sovereignty under our federal system." *Id.* at 33, 100 S.Ct. 2502. Nearly twenty years later, it is all too clear that Justice Powell's predictions were well-founded. Litigation under § 1983 proliferates throughout federal dockets around the country.

**4.** This inquiry involves a shifting burden of proof. Plaintiff bears the initial burden of demonstrating that the federal statute in question creates an individual right and, if plaintiff does so, there exists a rebuttable presumption that the right is enforceable under § 1983. *Blessing*, 520 U.S. at 341, 117 S.Ct. 1353. Defendant then bears the burden of establishing congressional intent to supplant the § 1983 remedy. *Id.* at 346, 117 S.Ct. 1353.

right. "First, Congress must have intended that the provision in question benefit the plaintiff." *Blessing,* 520 U.S. at 340, 117 S.Ct. 1353 (citing *Wright v. City of Roanoke & Hous. Auth.,* 479 U.S. 418, 430, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)). "Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence." *Id.* (citing *Wright,* 479 U.S. at 431–32, 107 S.Ct. 766). "Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the right must be couched in mandatory rather than precatory terms." *Id.* (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 510–11, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); *Pennhurst,* 451 U.S. at 17, 101 S.Ct. 1531).

■ The Telecommunications Act was designed to remove "barriers to entry" and to increase competition in the Telecommunications industry. *See TCG Detroit v. City of Dearborn,* 977 F.Supp. 836, 839 (E.D.Mich.1997). As the Supreme Court has recognized, the Telecommunications Act's "primary purpose was to reduce regulation and encourage 'the rapid development of new communications technologies.'" *Reno v. A.C.L.U.,* 521 U.S. 844, 117 S.Ct. 2329, 2337–38, 138 L.Ed.2d 874 (1997). The development of "personal wireless services," including cellular telephone services, is encompassed by the Act. *See* 47 U.S.C. § 332(c)(7)(C)(i) (1999).

To effectuate its purpose, the Telecommunications Act limits the ability of state and local zoning authorities to regulate the placement and construction of personal wireless service facilities, such as communications towers. The Act prohibits a local government from unreasonably discriminating among providers of personal wireless services, for example, or from taking any action which has the effect of prohibiting the provision of personal wireless services. 47 U.S.C. §§ 332(c)(7)(B)(i)(I) & (II) (1999). More specific to the case at bar, the Act provides that "any decision by a ... local government ... to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii) (1999).

Applying the three factors described above, the Court finds that the statutory provisions at issue give rise to a federal right. Indeed, all district courts heretofore addressing this question and applying these factors are in agreement that the Telecommunications Act of 1996 bestows federal rights upon personal wireless service providers. *See Omnipoint Communications, Inc. v. Penn Forest Township,* 42 F.Supp.2d 493, 503 (M.D.Pa.1999); *Omnipoint Communications Enterprises, L.P., v. Zoning Hearing Bd. of Chadds Ford Township,* 1998 WL 764762, at *5–6 (E.D.Pa. Oct.28, 1998); *APT Minneapolis, Inc. v. City of Maplewood,* 1998 WL 634224, at *6–7 (D.Minn. Aug.12, 1998); *MCI Telecommunications Corp. v. Southern New England Tel. Co.,* 27 F.Supp.2d 326, 333–34 (D.Conn.1998); *National Telecomm. Advisors, Inc. v. City of Chicopee,* 16 F.Supp.2d 117, 120–21 (D.Mass.1998); *Smart SMR of New York, Inc. v. Zoning Comm'n of the Town of Stratford,* 995 F.Supp. 52, 61 (D.Conn.1998); *Sprint Spectrum, L.P. v. Town of Easton,* 982 F.Supp. 47, 53 (D.Mass.1997).

First, plaintiff, a personal wireless service provider, is undoubtably among the intended beneficiaries of the statutory provision at issue, § 332(c)(7). In its previous order, the Court found that defendants violated the requirement of § 332(c)(7) which requires that the zoning authority's decision with regard to plaintiff's application be "in writing and supported by substantial evidence contained in a written record." (Order [26] (applying 47 U.S.C. § 332(c)(7)(B)(iii)).) This provision was

clearly intended to benefit plaintiff and other wireless service providers by ensuring against *ad hoc* decision-making and providing a record for appeals. *Compare Chadds Ford Township*, 1998 WL 764762, at * 5.

Second, the Telecommunications Act gives courts the authority to review decisions of the local zoning authorities on an expedited basis. 47 U.S.C. § 332(c)(7)(B)(v) (1998). Because Congress expressly gave courts the power of review, Congress clearly did not believe that the plaintiff's interest is "beyond the competence of the judiciary to enforce." *City of Chicopee*, 16 F.Supp.2d at 120 (quoting *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)). The rights protected by the Telecommunications Act, therefore, are not "so vague and amorphous" that their "enforcement would strain judicial competence." *Compare Penn Forest Township*, 42 F.Supp.2d 493 at 503; *Chadds Ford Township*, 1998 WL 764762, at * 5.

Finally, the Telecommunications Act creates obligations binding on defendants. As stated previously, the Act limits a zoning authority's ability to regulate the placement and construction of personal wireless service facilities and, specific to plaintiff's case, § 332(c)(7) imposes mandatory requirements upon state and local authorities with regard to applications for the construction of such facilities. *Compare City of Chicopee*, 16 F.Supp.2d at 120; *see also Penn Forest Township*, at 503. In sum, the plain language of the Act "is couched in mandatory terms." *Chadds Ford Township*, 1998 WL 764762, at * 5. *See, e.g.,* 47 U.S.C. § 332(c)(7)(B)(iii) (any decision by state or local government to deny application to place personal wireless service facilities *"shall* be in writing . . . ."); *compare* 47 U.S.C. § 332(c)(7)(B)(i)(I) (any state or local government *"shall not* unreasonably discrimi-

nate among providers . . ."), 47 U.S.C. § 332(c)(7)(B)(i)(II) (any state or local government *"shall not* prohibit . . .").

 For these reasons, the Court concludes that the protections afforded by the Telecommunications Act create a federal right. Once a plaintiff demonstrates that a federal statute creates an individual right, there arises a rebuttable presumption that the right is enforceable under § 1983. *Blessing*, 520 U.S. at 341, 117 S.Ct. 1353. The defendant may controvert that presumption by showing that Congress "specifically foreclosed a remedy under § 1983." *Id.* (quoting *Smith*, 468 U.S. at 1005 n. 9, 104 S.Ct. 3457).

### B. *Whether Congress Foreclosed Reliance on § 1983*

 Congress may express its intent to foreclose a § 1983 remedy explicitly, by stating its intent in the statute, or implicitly, by creating within the statute a comprehensive enforcement mechanism that is incompatible with the invocation and use of § 1983. *See Blessing*, 520 U.S. at 341, 117 S.Ct. 1353; *Sea Clammers*, 453 U.S. at 19–20, 101 S.Ct. 2615. Nothing in the language of the Telecommunications Act itself expressly supplants remedial action under § 1983. *See, e.g., Chadds Ford Township*, 1998 WL 764762, at * 7. Moreover, plaintiff argues that Congress explicitly evinced its intent that § 1983 remain a viable remedy in the notes accompanying § 152 of the Act:

(c) **Federal, State and local law.—**

(1) **No implied effect.**—This Act and the amendments made by this Act shall not be construed to modify, impair, or supersede Federal, State, or local law unless expressly so provided in such Act or amendments.

47 U.S.C. § 152(c)(1) note (1999). Indeed, where Congress has specifically indicated that it did not intend to displace other

remedies, congressional intent is controlling and a § 1983 remedy remains available. *See Smith,* 468 U.S. at 1013 n. 16, 104 S.Ct. 3457 (agreeing that expression of congressional intent would be controlling, but finding that the legislative history on which petitioners relied was not a clear expression of congressional intent). Defendant responds that this broad provision does not even refer to remedies, but was added to assure the preservation of local authority over local zoning issues. (Defs.' Response [34] at 5.) *See* 47 U.S.C. § 332(c)(7)(A) (preserving local zoning authority except in limited circumstances expressly discussed in section (B)) (1999).

The Court concludes that the note to § 152(c)(1) is a broad, indefinite statement that does not address remedial measures. In fact, in the Congressional Record submitted by plaintiff, discussion of this vague provision is surrounded by discussion regarding the preservation of federal antitrust laws and state and local tax laws. (Pl.'s Mot. for Partial Summ. J. [32], Ex. D, House Report 104–458.) While a clear expression of congressional intent to preserve or to preempt § 1983 or other *remedies* would be controlling, in this instance the note to § 152(c)(1) "sheds little light" on Congress's intent regarding § 1983. *Johnson v. City of Fort Lauderdale,* 148 F.3d 1228, 1230 (11th Cir.1998) (omission of proposal in House to include savings clause preserving civil rights statutes "shed[ ] little light" on Congress's intent to preserve or preempt § 1983 remedies). In the absence of express intent, therefore, the question remains whether congressional intent to supplant § 1983 may be implied from the Telecommunications Act.

One year after *Maine v. Thiboutot* granted plaintiffs the ability to bring § 1983 claims based on federal statutory rights, the Supreme Court limited its holding in *Sea Clammers,* concluding that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Sea Clammers,* 453 U.S. at 20, 101 S.Ct. 2615. In *Sea Clammers,* the plaintiffs attempted to assert a § 1983 claim based on alleged violations of the Federal Water Pollution Control Act ("FWPCA") and the Marine Protection, Research, and Sanctuaries Act of 1972 ("MPRSA"). The FWPCA and the MPRSA contain "unusually elaborate enforcement provisions" which ultimately confer authority on both government officials and private citizens to sue for injunctions to enforce the statutes. *Id.* at 13–14, 101 S.Ct. 2615. The Supreme Court concluded, therefore, "that the existence of these express remedies demonstrates not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under § 1983." *Id.* at 21, 101 S.Ct. 2615.

Also, in *Smith v. Robinson,* the plaintiffs brought claims based on the Education for All Handicapped Children Act ("EHA") and brought parallel constitutional claims under § 1983. The EHA provides "carefully tailored administrative and judicial mechanisms" through which handicapped children with constitutional claims to a "free appropriate public education" can pursue their claims.[5] *Smith,* 468 U.S. at 1009, 104 S.Ct. 3457. Specifically, the

---

**5.** The situation presented in *Smith* is notably different than that presented in *Thiboutot* and *Sea Clammers.* The latter cases addressed only statute-based § 1983 claims, whereas *Smith* involved § 1983 claims predicated on constitutional rights already addressed by statute. *See* Michael A. Swibelman, Comment, *Why Title IX Does Not Preclude Section 1983 Claims,* 65 U.Chi.L.Rev. 1465, 1467–69

(1998). In *Smith,* the plaintiffs brought claims under § 1983 alleging a constitutional violation—the denial of a "free appropriate public education" as guaranteed by the Equal Protection Clause. This § 1983 claim was virtually identical to the plaintiffs' EHA claims because the EHA was designed by Congress to address means of enforcement of

EHA establishes procedures to ensure that hearings conducted by the State were fair and adequate, and provides a right to judicial review of those hearings. *Id.* at 1010–11, 104 S.Ct. 3457. The Supreme Court concluded that the comprehensive nature of the "procedures and guarantees" set forth in the EHA indicate that Congress did not intend for § 1983 to be used to enforce the EHA—indeed, the EHA rendered the § 1983 remedy superfluous. *Id.* at 1012, 104 S.Ct. 3457.

The Supreme Court noted, however, that "[w]e do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for a substantial equal protection claim." *Smith,* 468 U.S. at 1012, 104 S.Ct. 3457. Indeed, the Supreme Court has "found a remedial scheme sufficiently comprehensive to supplant § 1983" on only two occasions: *Sea Clammers* and *Smith. Blessing,* 520 U.S. at 347, 117 S.Ct. 1353. Nevertheless, the cases in which the Court has decided that § 1983 was *not* supplanted by the statutory remedial scheme are instructive, as well. The following cases indicate that the provisions which expressly provided for private judicial actions in the FWPCA and the MPRSA discussed in *Sea Clammers,* and in the EHA discussed in *Smith,* were a catalyst for the Court's holdings in those cases.

For example, in *Wright,* the Supreme Court noted that "[i]n both *Sea Clammers* and *Smith v. Robinson,* the statutes at issue themselves provided for private judicial remedies, thereby evidencing congressional intent to supplant the § 1983 remedy." *Wright,* 479 U.S. at 427, 107 S.Ct. 766. In determining that the plaintiffs could bring a § 1983 claim for violations of the Brooke Amendment to the Housing Act, the Court noted that the Housing Act does not contain a private judicial remedy.[6] *Id.* Similarly, in *Wilder,* the Supreme Court determined that the Medicaid Act "contains no comparable provision for private judicial or administrative enforcement."[7] *Wilder,* 496 U.S. at 521, 110 S.Ct. 2510. Again, in *Blessing,* the Court "found significant the fact that, unlike the statutes at issue in *Smith* or *Sea Clammers,*" Title IV–D of the Social Security Act "contains no private judicial or administrative remedy by which aggrieved individuals may seek equitable relief or damages" and thus concluded that Title IV–D was not sufficiently comprehensive to supplant the remedy provided by § 1983. *City of Chicopee,* 16 F.Supp.2d at 121–22 (discussing *Blessing,* 520 U.S. at 347–48, 117 S.Ct. 1353).

Also instructive is the Eleventh Circuit's discussion in *Gonzalez v. Pingree,* 821 F.2d

the same constitutional right. Therefore, the question before the Court was "whether Congress intended that the EHA be the exclusive avenue through which a plaintiff may assert those claims." *Smith,* 468 U.S. at 1009, 104 S.Ct. 3457. In deciding that the remedies provided by the EHA precluded plaintiffs' § 1983 Equal Protection claim, the Court noted that a plaintiff could otherwise use § 1983 to seek direct judicial enforcement and thus circumvent the requirement of exhausting available EHA administrative remedies prior to judicial review. *Id.* at 1011–13, 104 S.Ct. 3457. This concern is not at issue in the case at bar because the § 1983 rights asserted are purely statute-based rights and are not predicated on constitutional rights.

6. The remedies specifically provided by the Housing Act included the availability of certain local and administrative grievance proce-

dures which affected tenants could pursue. Additionally, the statute granted the Department of Housing and Urban Development ("HUD") the authority to cut off federal funding to public housing authorities for noncompliance. *Wright,* 479 U.S. at 427–28, 107 S.Ct. 766.

7. In *Wilder,* the Court noted that the remedies authorized by the Medicaid Act include authorization of the Secretary of Health and Human Services to withhold approval of plans and to curtail federal funding to states not in compliance with the Act. In addition, the Act requires states to adopt a procedure for postpayment claims review and for management of their state Medicaid programs. *Wilder,* 496 U.S. at 521–22, 110 S.Ct. 2510.

1526 (11th Cir.1987). In *Gonzalez*, the issue for resolution was whether § 1983 provides a remedy for violations of the Food Stamp Act. *Gonzalez*, 821 F.2d at 1526. The Eleventh Circuit observed that, in *Wright*, the Supreme Court emphasized "that in prior cases where congressional intent to preclude § 1983 actions was divined the particular statutes involved provided for private judicial enforcement...." *Id.* at 1528–29. Like the Housing Act in *Wright*, the Food Stamp Act provided only administrative remedies and granted the Secretary of Agriculture generalized supervisory powers analogous to HUD's supervisory powers. Thus, the Eleventh Circuit concluded that private judicial action under § 1983 for alleged violations of the Food Stamp Act was not precluded. *Id.* at 1529. Notably, the deciding factor in the Eleventh Circuit's decision appears to have been the absence of any provision in the Food Stamp Act for a "private judicial remedy to test the decisions and policies of the state agencies in administering the food stamp program." *Id.*

■ The Telecommunications Act, in contrast, provides a clear mechanism for private redress of alleged violations of the Act: expedited judicial review of decisions affecting personal wireless services providers rendered by local zoning authorities. 47 U.S.C. § 332(c)(7)(B)(v) (1999).[8] *See Penn Forest Township*, at 505; *City of Chicopee*, 16 F.Supp.2d at 122. The fact that the remedial scheme provided in the Act is not complicated certainly does not forestall the conclusion that it is comprehensive. In fact, the remedy provided—expedited federal judicial review—could not be more complete. As the court noted in *Penn Forest Township*,

> it is difficult to envision a judicial mechanism more comprehensive than that established by Congress in the Telecommunications Act—direct and expedited federal judicial review without any need to exhaust state remedies. Although the Telecommunications Act may not provide "elaborate" procedural trappings, the simplicity of its remedial scheme does not preclude a determination that it is comprehensive. Congress provided the ultimate remedial measure: expedited federal judicial review.

*Penn Forest Township*, at 505.[9] *See also City of Chicopee*, 16 F.Supp.2d at 122 ("the absence of any provision for fees in the [Telecommunications Act] is telling").

The Telecommunications Act was designed to provide a prompt remedy for personal wireless service providers improperly denied permission to erect a communications tower or, in this case, to attach their antennas to existing towers. Previously, review of decisions rendered by local zoning authorities was sought under state law, and often in State court. Congress clearly stated that the Telecommunications Act was to preempt state law with regard to the placement of personal wireless service facilities only as narrowly defined in the Act in § 332(c)(7)(B). 47 U.S.C. § 332(c)(7)(A) (1999). Essentially,

---

8. The statute provides in relevant part:

Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. ..

47 U.S.C. § 332(c)(7)(B)(v) (1999).

9. The court in *City of Chicopee* observed that "the comprehensiveness of the [Telecommuni-

cations Act's] remedial scheme is perhaps best evidenced by the fact that the § 1983 statutory apparatus adds nothing to plaintiff's remedial armament under the [Telecommunications Act]—except the opportunity to seek attorney's fees under § 1988." *City of Chicopee*, 16 F.Supp.2d at 122. Of course, plaintiff in this case seeks compensation for lost profits, not just attorney's fees, and in that sense, plaintiff's case is distinguishable.

Congress placed within the federal judicial repertoire only the power to expedite review of these local zoning decisions in order to ensure compliance with designated procedural safeguards. As noted by the court in *Penn Forest Township*, "[t]o assert that Congress intended to not only provide expedited judicial review of local zoning determinations, thereby supplanting state procedural safeguards, but also provide for a § 1983 action against local regulatory bodies for actions traditional governed by state law stretches the Telecommunications Act too far." *Penn Forest Township*, at 507 n. 16.

The Telecommunications Act was written to address the problem of "home cooking" faced by many personal wireless service providers when applying for permits. Admittedly, in some cases the decisions of local zoning authorities and political bodies may be motivated by political considerations and public sentiment, not by the evidence in the record. Presumably in the majority of cases, however, decisions rendered by zoning boards will have been made after careful thought and balanced consideration of the issues. That the final decision maker—a federal judge—may sometimes disagree with the correctness of the decision of the particular zoning board does not suggest that the zoning board did not act in a conscientious and good faith manner, for some decisions will be less obvious than others. Also, predictably, there will be some zoning authorities, perhaps less sophisticated and with fewer legal resources than the City of Atlanta, who may stumble, albeit in an earnest attempt to comply with the Telecommunications Act. When these zoning boards do stumble or when they reach a decision with which the telecommunications company disagrees, Congress has given district courts the authority to review and, if necessary, correct the decisions of these local zoning authorities. In fact, the expedited judicial review required by the statute actually serves to limit the amount of lost profits accumulated in the interim period between the zoning board's decision and the district court's review of that decision. To impose monetary damages on decision-making bodies for an exercise of judgment that, whatever the outcome, the body must make, however, goes beyond what this Court concludes to be the contemplated reach of the Telecommunications Act.

Moreover, the benefit of expedited review—the swift resolution of the disagreement between the personal wireless services provider and the local governing body regarding placement of wireless services facilities—is circumvented if wireless service providers are allowed to bring § 1983 claims in conjunction with their request for expedited review under the Telecommunications Act. The addition of the § 1983 claim, which does not receive expedited review, results in two-tiered litigation, prolonging the process and thus obviating the expediency of resolution contemplated by the statute.

In *Thiboutot*, the Supreme Court extended § 1983 as a remedy for violations of federal statutory law and, at its inception, § 1983 was designed to provide a remedy or a means of enforcement of federal law where no adequate means of enforcement is otherwise available. The Telecommunications Act, however, provides a comprehensive means of enforcement—that of expedited federal judicial review. The fact that the Telecommunications Act does not provide for recovery of compensatory damages or attorney's fees does not render the means of enforcement any less adequate or comprehensive in nature. If § 1983 actions were allowed here in addition to the relief specifically contemplated by Congress, Justice Powell's fears expressed in his dissent to *Thiboutot* will only be further confirmed as this would "dramatically expand[ ] the liability of state and local officials." *Thiboutot*, 448 U.S. at 12, 100 S.Ct. 2502 (Powell, J.,

dissenting). Indeed, a claim for attorney's fees and lost profits would likely be available to the telecommunications company in every case in which it prevails. Moreover, states have historically made zoning and land use decisions. To allow § 1983 to be easily appended to a complaint where a statutory remedy is already available, and where Congress clearly stated that the statute is to be read narrowly so as not to further limit the authority of state and local governments, would create yet another intrusion by the federal government into state sovereignty. *See id.* at 33, 100 S.Ct. 2502.

For these reasons the Court finds that Congress has provided personal wireless service providers a private judicial remedy—that of expedited review in federal court of zoning authorities' decisions—and thus has implicitly foreclosed reliance on § 1983 as a means of enforcing the Telecommunications Act. Accordingly, plaintiff's motion for partial summary judgment on this issue is **DENIED.**

## III. PLAINTIFF'S CLAIM FOR DAMAGES UNDER THE TELECOMMUNICATIONS ACT

■ Alternatively, plaintiff in this case seeks recovery of its lost profits and of other losses incurred when defendants improperly denied its application to attach its antennas to the pre-existing tower at 2350 Benjamin E. Mays Drive directly under § 332(c)(7)(B)(iii) of the Telecommunications Act. Plaintiff concedes that the statute does not expressly authorize an award of damages. Plaintiff nevertheless contends that "where Congress confers an express cause of action for redress for

violations of federal law without specifying the available relief, federal courts can grant damages or any other form of relief to remedy the violation of federal law." (Pl.'s Br. in Supp. of Mot. for Partial Summ.J. [31] at 2.) Plaintiff relies on the Supreme Court's decision in *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), in which the Court acknowledges the "general rule" that "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin*, 503 U.S. at 70–71, 112 S.Ct. 1028.

In *Franklin*, the Supreme Court recognized "the long line of cases in which the Court has held that if a right of action exists to enforce a federal right and Congress is silent on the question of remedies, a federal court may order any appropriate relief." *Id.* at 69, 112 S.Ct. 1028 (citations omitted). Certainly, personal wireless service providers have a right of action in that they are entitled to expedited judicial review. The question is thus whether "appropriate relief" under the Telecommunications Act encompasses all forms of relief, or whether Congress intended that the available relief be limited to injunctive relief.[10]

First, it is important to "evaluate the state of the law when the Legislature passed [the Telecommunications Act]." *Franklin*, 503 U.S. at 71, 112 S.Ct. 1028 (looking to common-law tradition). Had plaintiff brought this action in State court in Georgia prior to the enactment of the Telecommunications Act, under Georgia law plaintiffs could not have recovered its lost profits incurred as a result of the zoning authority's improper decision. *See Cobb County v. McColister*, 261 Ga. 876,

10. No other district court has found that a wireless service provider is entitled to monetary damages under the Telecommunications Act, although the decisions regarding this issue have been issued summarily and without discussion. *See PrimeCo Personal Communications Ltd. Partnership v. Lake County, Fla.*,

1998 WL 565036, at * 15 (M.D.Fla. July 20, 1998); *Virginia Metronet, Inc. v. Board of Supervisors of James City County, Va.*, 984 F.Supp. 966, 977 (E.D.Va.1998); *Illinois RSA No. 3, Inc. v. County of Peoria*, 963 F.Supp. 732, 747 (C.D.Ill.1997).

413 S.E.2d 441 (1992); *Forsyth County v. Greer*, 211 Ga.App. 444, 439 S.E.2d 679 (1993).[11] To allow plaintiff to now obtain recovery for an improper zoning decision resulting from the defendants' failure to comply with the Telecommunications Act, even though the plaintiff would never have been unable to recover for that same improper zoning decision under state law, goes beyond the limits of relief contemplated by the statute. Congress intended that the statute be read narrowly, and in doing so, the Court finds that Congress only intended to supercede state law with regard to the federal procedural safeguards listed in the statute and that the only relief contemplated by Congress was that of injunctive relief. Thus, challenges to a zoning authority's decisions are, as before, a cost of doing business. *See* discussion *supra.*

Additionally, in the cases cited by plaintiff, including *Franklin,* and *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), injunctive relief would not have been adequate to address the problems raised in those cases. In *Franklin,* the Supreme Court found that compensatory damages were available to a student who was sexually harassed by her teacher in an extreme, egregious manner. In *Bell v. Hood,* the Court sought to compensate persons who had been illegally searched or jailed. In the present case, by contrast, the Court finds that injunctive relief is sufficient to address defendants' violation of the procedural safeguards delineated in § 332(c)(7)(B) of the Telecommunications Act. *See* discussion *supra,* Section II.B.

Plaintiff argues that injunctive relief does not give zoning officials any incentive to follow the law. The Court doubts the accuracy of this observation because zoning officials will often incur legal fees and expend scarce resources in defending the inevitable law suit that will follow a denial of a request by a telecommunications company. The Court does not assume that zoning bodies will typically want to engage in futile and potentially expensive battles with telecommunication giants. At any rate, this is an issue that should be resolved by Congress, not the courts. Notably, in *Franklin* and in *Bell v. Hood,* the Supreme Court acted to fashion the appropriate remedy for a violation of laws in which the plaintiffs' claims were brought based on an implied right of action. For example, in *Franklin* the student brought her claim under the implied right of action in Title IX and, because Title IX contained no express right of action, the Supreme Court noted that "it is hardly surprising that Congress also said nothing about the applicable remedies for an implied right of action." *Id.* at 71, 112 S.Ct. 1028. In the present case, however, Congress provided an express right of action. In doing so, Congress could have included an express provision for monetary relief. The ab-

11. Georgia cases indicate that in an appeal of a zoning decision to state court, even when the court finds the zoning decision otherwise unlawful, a land owner does not recover for losses incurred as a result of the improper zoning decision during the pendency of the appeal.

In *McColister,* the property owner filed an application to rezone his property which was denied by the Cobb County Board of Commissioners. When the property owner appealed this decision to Superior Court, the trial court determined that the existing zoning was unconstitutional. *McColister,* 261 Ga. at 876, 413 S.E.2d 441. The property owner argued that there had been an unconstitutional taking of his property and sought damages pursuant to § 1983. The trial court granted the property owner's request for § 1983 damages incurred from the time he filed his application until the time the trial court overruled the Commission's decision. *Id.* The Supreme Court overruled the trial court's decision, finding that the property owner had not suffered a compensable taking under the Fifth Amendment to the United States Constitution and, therefore, could not recover under § 1983. *Id.* at 877. 413 S.E.2d 441.

Similarly, in *Greer,* the property owners brought an inverse condemnation suit against Forsyth County for delay in issuing permits and certificates necessary to develop a subdivision. The Court of Appeals denied the property owners' request for damages under § 1983 finding that the delay of completion of their project was not sufficient to show a § 1983 violation. *Greer,* 211 Ga.App. at 446–47, 439 S.E.2d 679.

sence of any provision for compensatory relief in the Telecommunications Act is, therefore, revealing.

Accordingly, the Court concludes that there is no implicit right to compensatory relief for a violation of the Telecommunications Act and, therefore, plaintiff's motion for partial summary judgment with regard to this issue is **DENIED.**

## CONCLUSION

For the foregoing reasons, the Court finds that plaintiff's motions for partial summary judgment seeking damages under section 1983 and 1988[32] or, in the alternative, seeking relief under section 704 of the 1996 Telecommunications Act [31] are **DENIED.** Finally, plaintiff's Motion to Strike and Notice of Objection to Settlement Evidence [35] is **GRANTED** at this stage pursuant to FED.R.CIV.P. 68 and FED.R.EVID. 408. Although defendants have not filed a motion for summary judgment, this order effectively ends this litigation. Accordingly, the Clerk is DIRECTED to close the case.

SO ORDERED.