

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-11-2002

# Nextel Partners Inc v. Kingston Twp

Precedential or Non-Precedential:

Docket No. 00-2502

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Nextel Partners Inc v. Kingston Twp" (2002). *2002 Decisions.* Paper 267.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/267

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed April 11, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2502

NEXTEL PARTNERS INC.,
        Appellant

v.

KINGSTON TOWNSHIP

WILLIAM F. ANZALONE; TINA M. ANZALONE; ERIC
WOLFSON; STEFANIE WOLFSON; CHRISTOPHER L.
HACKETT; RAMAH P. HACKETT; STEVEN J. KERZWEIL;
SUSAN Z. WILKINSON; ROBERT J. FIORELLI; JOANNE
FIORELLI; ROBERT C. RILEY; SHERRY L. RILEY;
HARVEY J. REISER; KATHLYN M. REISER; JOSEPH
ALLEN MOORE/ MICHAEL CORGAN, T/A WOODBRIDGE
ASSOCIATES
        (Intervenors in D.C.)

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

(Dist. Court No. 3:99-CV-2097)
District Court Judge: Honorable James M. Munley

Argued September 6, 2001

Before: BECKER, Chief Judge, ALITO and BARRY, Circuit
Judges.

(Filed: April 11, 2002)


        CHRISTOPHER H. SCHUBERT
        MICHAEL J. GAVIN (Argued)
        Riley, Riper, Hollin & Colagreco
        102 Pickering Way
        Suite 200
        Exton, PA 19341

        JAMES C. DALTON
        Riley, Riper, Hollin & Colagreco
        240 Daylesford Plaza
        P.O. Box 568
        Paoli, PA 19301

         Counsel for Appellant

        ZYGMUNT R. BIALKOWSKI, JR.
         (Argued)

Margolis Edelstein
Oppenheim Building, Suite 3C
409 Lackawanna Avenue
Scranton, PA 18503

  Counsel for Appellee,
Kingston Township

DONALD H. BROBST (Argued)
Rosenn, Jenkins & Greenwald, LLP
15 South Franklin Street
Wilkes-Barre, PA 18711-0075

WILLIAM F. ANZALONE
Anzalone Law Offices
98 South Franklin Street
Wilkes-Barre, PA 18701

  Counsel for Appellees,
William F. Anzalone et al.

OPINION OF THE COURT

ALITO, Circuit Judge:

Nextel Partners, Inc. ("NPI"), a wireless
telecommunications joint venture, wishes to construct a
personal wireless communications tower on private

2

property in Kingston Township, Pennsylvania. Unable to
obtain variances, NPI entered into negotiations with the
Township but never formally applied for a building permit.
Instead, NPI filed this action in federal district court,
asserting claims under a provision of the federal
Telecommunications Act of 1996 ("TCA"), 47 U.S.C.
S 332(c)(7)(B)(i), and 42 U.S.C. S 1983. The District Court
dismissed, and we affirm.

I.

NPI is participating in the creation of a national wireless
network to provide "enhanced specialized mobile radio
service," which integrates several different types of wireless
service. See Appellant's Br. at 4-5. NPI determined that, in
order to cover an area that includes segments of three
major highways, it needed to build a 150-foot "monopole"
tower and related facilities ("a telecommunications facility")
on or near certain property that it leased from Daniel
Voitek in Kingston Township. In July 1999, NPI submitted
to the Kingston Township Zoning Hearing Board (ZHB) a
"validity challenge" to the Kingston zoning ordinance. NPI
alleged, among other things, that the ordinance violated the
TCA. NPI claimed that, although the TCA provides that
state and local laws "shall not prohibit or have the effect of
prohibiting the provision of personal wireless services," 47
U.S.C. S 332(c)(7)(B)(i)1, the Kingston ordinance on its face
did not allow wireless telecommunications facilities

anywhere in the Township. In the alternative, NPI sought the issuance of use and dimensional variances and"such other interpretations, waivers and/or variances as may be required" to build the proposed facility. Appellant's App. at 41.

_____

1. The statute, in pertinent part, provides as follows:

> The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. S 332(c)(7)(B)(i) (2000).

The ZHB conducted a hearing and issued a written decision on October 7, 1999. The ZHB agreed with NPI that the Township's ordinance did not permit wireless telecommunication facilities in any zoning district, and the ZHB recommended that the Township amend the ordinance. However, the ZHB denied NPI's application for a use variance. It concluded that the proposed site was "not a proper location for a monopole tower," "[g]iving due consideration to topography, adjoining uses and the public health and welfare." Appellee's App. at 39. The ZHB also observed that NPI had not proven that the property could not be developed in conformity with the provisions of the zoning ordinance or that denial of the use variance would result in an unnecessary hardship.

The TCA allows an aggrieved party to file an action in a court of competent jurisdiction within 30 days after a "final action or failure to act by a State or local government or any instrumentality thereof."  47 U.S.C. S 332(c)(7)(B)(v). NPI, however, did not file its TCA action in federal district court until 57 days after the ZHB denied its application. Instead, NPI first attempted to negotiate with the Township's Board of Supervisors and its Solicitor. Precisely what occurred during these discussions is disputed.

NPI alleges that, at a meeting on November 3, 1999, the Township conceded that its ordinance was invalid, promised to issue the permits necessary for the tower, and agreed to extend the deadline for filing an action to contest the ZHB decision. NPI states that, in reliance on this agreement with the Township, it withheld filing the complaint that it had planned to file on November 5 (within 30 days of the ZHB's October 7 decision). The Township, by contrast, denies that the parties ever reached a final settlement. According to the Township, the parties merely came to a general framework for a "tentative resolution," and no final agreement to issue a building permit was ever reached. Appellee's Br. at 7. The Township acknowledges, however, that it agreed to an extension of the time during which NPI could file an action in federal court contesting the decision of the ZHB. The Township's position is

consistent with what is apparently the only document
generated by the November 3 meeting: a letter dated

4

November 4, 1999 from NPI's counsel to the Township's
Solicitor. The letter described their agreement as a"general
framework" and a "tentative resolution." Appellant's App. at
64. It confirms arrangements for NPI to pick up a permit
application, but it does not indicate that the Township had
promised to issue a building permit. NPI never filed a
permit application.

On December 3, 1999, NPI filed this action in the United
States District Court for the Middle District of
Pennsylvania, naming both the ZHB and the Township as
defendants and asserting both federal and state-law claims.
After property owners intervened in the action, NPI filed an
amended two-count complaint that named the Township as
the sole defendant. Count I of the amended complaint
asserted a claim directly under the TCA. Count I averred
that the Township was violating the TCA because its
ordinance had the effect of prohibiting the provision of
personal wireless service. As relief, Count I sought a writ of
mandamus and an injunction requiring the Township to
permit construction of a telecommunications facility on the
Voitek site, as well as damages and other relief. Count II
asserted a similar TCA claim under 42 U.S.C. S 1983 and
requested damages and attorney's fees.

While this action was pending before the District Court,
the Township amended its ordinance in April 2000. On
its face, the new ordinance allowed wireless
telecommunications facilities to be built in the Township. In
July 2000, the District Court dismissed NPI's action. The
Court held that the claim asserted in Count I was barred
because NPI had not commenced its action within 30 days
after the ZHB denied its application. The Court held that
the 30-day rule was "jurisdictional" and could not be
extended. In addition, the Court opined that the April 2000
amendment of the ordinance had rendered Count I moot,
and the Court stated that it would have dismissed this
count as moot "even if the thirty-day limitations period had
been satisfied." The Court dismissed Count II for failure to
state a claim on which relief may be granted. The Court

5

held that a federal TCA claim may not be asserted under
S 1983. This appeal followed.2

On appeal, NPI argues that the claim advanced in Count
I of its amended complaint was timely and that a TCA claim
may be asserted under S 1983. We will address each of
these arguments in turn.

II.

Although the TCA recognizes that the states retain primary authority for land use regulation, the Act places certain specified restrictions on the regulation of personal wireless service. See 47 U.S.C. S 332(c)(7). The key provision says that state and local regulations may not either "unreasonably discriminate among providers of functionally equivalent services" or "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. S 332(c)(7)(B)(i). State and local governments and instrumentalities are also enjoined to "act on any request for authorization to place, construct or modify personal wireless service facilities within a reasonable period of time after the request is duly filed . . . taking into account the nature and scope of such request." 47 U.S.C. S 332(c)(7)(B)(ii). In addition, "any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with [47 U.S.C.S 332(7)(B)(7)] may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." 47 U.S.C. S 332(c)(7)(B)(ii) (emphasis added).

In this case, as noted, the District Court dismissed Count I of NPI's amended complaint on the ground that NPI did not commence its action within 30 days after the decision of the ZHB. NPI maintains, however, that the District Court's holding was based on an erroneous understanding

_____

2. In October 2000, NPI applied for a permit under the new Kingston ordinance, as amended in April 2000. But in February 2001, the ZHB denied this application. NPI challenged this denial by filing a complaint in the Court of Common Pleas of Luzerne County, Pennsylvania (Docket No. 1856-C (2001)).

6

of the claim asserted in Count I. That claim, NPI states, was not based on the decision of the ZHB (which had been dropped as a defendant) but on the Township's continued failure to amend its ordinance, which was inconsistent with the TCA.3 NPI therefore argues that the 30-day limitations period in 47 U.S.C. S 332(c)(7)(B)(ii) did not begin to run until the Township amended its ordinance on April 12, 2000. See Appellant's Br. at 16. It is apparently NPI's position that during the entire period up to April 12, 2000, the Township was continuously engaged in a "failure to act . . . that was inconsistent with [47 U.S.C. S 332(c)(7)(B)]." 47 S U.S.C. S 33(c)(7)(B)(v).

Read generously, Count I of the amended complaint may assert two separate TCA claims. The first -- and plainly the chief -- claim is that the Township violated the TCA by failing to approve the construction of NPI's proposed facility. The second is that the prior Kingston ordinance was inconsistent on its face with the TCA and that NPI should receive relief from having to comply with that invalid ordinance. We hold that the first claim does not fall within 47 U.S.C. S 332(c)(B)(7)(v) because NPI never filed with the

Township a request for approval of its proposed facility. We
hold that the second claim is moot.

A.

We turn to NPI's claim that the Township violated the
TCA by failing to approve its proposed facility. The language
of 47 U.S.C. S 332(c)(B)(7)(v) permitting an aggrieved party
to commence an action to challenge a "failure to act" must
be read in conjunction with the previously noted provision
requiring state and local governments and instrumentalities
to act within a reasonable time on "any request for
authorization to place, construct, or modify personal
wireless service facilities." 47 U.S.C. S 332(c)(B)(7)(iii). Thus,
if a state or local government or instrumentality fails to act
on a "request for authorization to place, construct, or

_____

3. In view of this argument, we need not and do not decide whether a
claim contesting the decision of the ZHB would have been time-barred
despite the Township's agreement to extend the time for NPI to file an
action under the TCA.

modify [a] personal wireless service facilit[y]," 47 U.S.C.
S 332(c)(B)(7)(iii), that "failure to act" is actionable under 47
U.S.C. S 332(c)(B)(7)(v). Here, if NPI had filed such a request
with the Township and the Township had failed to act on
the request, the Township's failure to act would be deemed
a denial and could be challenged in court.

It is undisputed, however, that NPI never filed with the
Township a building permit application or any other
"request for authorization to place, construct, or modify
personal wireless service facilities."4  Yet the main thrust of
Count I of NPI's amended complaint is that the Township
violated the TCA by failing to approve construction of its
proposed telecommunications facility on the Voitek site.
Similarly, the primary relief sought in Count I is the
issuance of a writ or injunction requiring the Township to
grant such approval.5 To the extent that Count I challenges
the Township's failure to approve NPI's facility, we hold that
it does not fall within 47 U.S.C. S 332(c)(B)(7)(v). In the
absence of a request to approve the construction of a
facility, the failure to approve the facility is not a "failure to
act" within the meaning of this provision.

For a similar reason, we also see no merit in NPI's
alternative argument that the 30-day period did not begin
to run until November 3, 1999, "the date that the Township
agreed to issue a building permit to NPI to remedy the
deficiency with its Ordinance." Appellant's Br. at 16.
Assuming for the sake of argument that the Township
orally agreed during the settlement discussions to issue a

_____

4. Moreover, even if NPI had applied to the Township for a building
permit, the Township apparently lacked the power to act on such an

application under state law. See Pa. Stat. Ann. tit. 53 S 10909.1(a)(3) (West 1997) (conferring upon the zoning hearing board "exclusive jurisdiction to hear and render final adjudications" over appeals from the decision of the zoning officer, including "the granting or denial any permit, or failure to act on the application therefor . . . .").

5. Count I requested that the District Court"[i]ssue a Writ of Mandamus and enter preliminary and permanent injunctions directing Defendant Kingston Township, to grant approval of NPI's telecommunications facilty to permit the use of the Property for a telecommunications facility including a 150' monopole in accordance with NPI's Application." Appellant's App. at 26a.

building permit, the fact remains that NPI never applied to the Township for a permit. Accordingly, the Township did not engage in the type of "failure to act" that is actionable under 47 U.S.C. S 332(c)(B)(7)(v).

B.

We now consider the second claim that we perceive in Count I, i.e., that the old Kingston ordinance was inconsistent on its face with the TCA and should not be enforced against NPI. We affirm the dismissal of this claim on the ground that it is moot.

Under Article III, section 2 of the U.S. Constitution, federal judicial power extends only to cases and controversies. If a claim no longer presents a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it. See Allen v. Wright, 468 U.S. 737, 750 (1984). This requirement must be met "through all stages of federal judicial proceedings, trial and appellate." Lewis v. Continental Bank Corp., 494 U.S. 472 477 (1990). If a claim is based on a statute or ordinance that is amended after the litigation has begun, the amendment may or may not moot the claim, depending on the impact of the amendment. See Nextel West Corp. v. Unity Township, 282 F.3d 257, (3d Cir. 2002).

As we recently noted, "if an amendment removes those features in the statute being challenged by the claim, any claim for injunctive relief 'becomes moot as to those features.' " Unity Township, 282 F.3d at 262 (quoting Khodara Envtl., Inc. v. Beckman, 237 F.3d 186, 194 (3d Cir. 2001)). On the other hand, an amendment does not moot a claim for injunctive relief if the updated statute differs only insignificantly from the original. See Unity Township, 282 F.3d at 262. Similarly, a request for a declaratory judgment that a statutory provision is invalid is moot if the provision has been substantially amended or repealed. See id. at 263 n.5; see also Diffenderfer v. Central Baptist Church, 404 U.S. 412, 414-15 (1972).

Here, if we read Count I as seeking an injunction against enforcement of the old ordinance and a declaratory

judgment that the old ordinance violated the TCA because it entirely prohibited the construction of telecommunications facilities in the Township, the 2000 amendment rendered those requests for relief moot. In Unity Township, we held that a claim for injunctive relief was not mooted by an amendment to an ordinance because the plaintiff had adduced evidence that the prohibitive effect of the ordinance had not been substantially altered. Here, by contrast, NPI did not attempt to make such a showing. It did not compare the effect of the original ordinance and the amended ordinance. Instead, NPI appears to rely on a dubious bit of inductive reasoning: until NPI receives a permit, which it still does not have after the amendment, the ordinance necessarily violates the TCA on its face. That is simply not how the statute operates.

III.

We now turn to the question whether the District Court correctly dismissed Count II because a TCA claim may not be asserted under 42 U.S.C. S 1983. Section 1983 provides a private right of action against any person who, acting under color of state or territorial law, abridges"rights, privileges, or immunities secured by the Constitution and laws" of the United States. See also Maine v. Thiboutot, 448 U.S. 1, 4 (1980). In order to seek redress underS 1983, a plaintiff "must assert the violation of a federal right," and not merely a violation of federal law. Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 106 (1989). Thus, a plaintiff alleging a violation of a federal statute may not proceed under S 1983 unless (1) the statute creates "enforceable rights, privileges, or immunities within the meaning of S 1983" and (2) Congress has not"foreclosed such enforcement of the statute in the enactment itself." Wright v. Roanoke Redev. & Hous. Auth., 479 U.S. 418, 423 (1987). See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1 (1981) (holding that S 1983 actions were impliedly precluded under the Federal Water Pollution Control Act).

A plaintiff asserting a statutory claim under S 1983 has the initial burden of demonstrating that the statute creates a substantive right. See Blessing v. Freestone , 520 U.S. 329

(1997). If the plaintiff carries this burden, a rebuttable presumption arises that a S1983 claim is available, and the burden shifts to the defendant to show that a S1983 action was explicitly or implicitly precluded by the statute. See Wright, 479 U.S. at 423. One way that a statute may implicitly preclude a S1983 action is by creating a comprehensive remedial scheme. See Sea Clammers , 453 U.S. at 20; Smith v. Robinson, 468 U.S. 992, 1011 (1984) (holding that S 1983 actions were impliedly precluded under the Education of the Handicapped Act); see also Farley v.

Philadelphia Hous. Auth., 102 F.3d 697, 703 (3d Cir. 1996) ("The Supreme Court has held that in enacting the U.S. Housing Act, Congress did not specifically foreclose a S1983 remedy by enactment of a comprehensive scheme of remedial mechanisms").

A key distinction between schemes that are sufficiently comprehensive to preclude a S 1983 claim and those that are not is the availability of private judicial remedies under the statute giving rise to the claim. "In both Sea Clammers and Smith v. Robinson, the statutes at issue themselves provided for private judicial remedies, thereby evidencing congressional intent to supplant the S 1983 remedy." Wright, 479 U.S. at 427. In Wright, by contrast, the Court found "nothing of that kind" in the housing statute at issue, and the Court ultimately concluded that S 1983 remedies were not precluded. Id. Similarly in Blessing, the Court reasoned that S 1983 remedies might be available under the statute at issue because "[u]nlike the federal programs at issue in [Sea Clammers and Smith, this statute] contains no private remedy--either judicial or administrative--through which aggrieved persons can seek redress." Blessing, 520 U.S. at 348 (analyzing Title IV-D of the Social Security Act, 42 U.S.C. S 651 et seq.).

Applying this analysis to the TCA, we hold that the TCA implicitly precludes an action under S 1983 by creating a comprehensive remedial scheme that furnishes private judicial remedies. While the remedial scheme provided by the TCA is not complicated, we believe that it is comprehensive in the relevant sense: it provides private judicial remedies that incorporate both notable benefits and corresponding limitations. Allowing plaintiffs to assert TCA claims under S 1983 would upset this balance.

11

Under the TCA, an aggrieved party may file an action in any court of competent jurisdiction. 47 U.S.C. S 332(c)(7)(B)(v). The TCA requires that such an action be filed within a very short period -- 30 days -- after an adverse decision or failure to act, and the Act correspondingly requires the court to "hear and decide such action on an expedited basis." Id. This streamlined review may work to the benefit of plaintiffs and defendants in different ways. For plaintiffs, it may provide speedy redress for violations of the Act. For defendants, assuming for the sake of argument that damages may be recovered under the TCA itself,6 quick review may diminish the amount that may be recovered. We also find it important that the TCA makes no provision for attorney's fees, and it is of course "the general rule in this country that unless Congress provides otherwise, parties are to bear their own attorney's fees." Fogerty v. Fantasy, Inc., 510 U.S. 517, 533 (1994); see also Alyeska Pipeline Service Co. v. Wilderness Soc'y, 421 U.S. 240, 247-62 (1975).

If a plaintiff alleging a violation of the TCA could assert its claim under S 1983, the remedial scheme of the TCA

would be upset. A plaintiff would be freed of the short 30-day limitations period and would instead presumably have four years to commence the action. See 28 U.S.C. S 1658. The court would also presumably be freed of the obligation to hear the claim on an expedited basis. Perhaps most

_____

6. We do not decide this question but note that when a statute creates a private right of action but does not specify what remedies are available, the availability of all appropriate remedies is generally presumed. See Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 70-71 (1992). As a matter of practice, however, the typical relief in cases like the one before us has been injunctive. See Omnipoint Communications v. Town of Lincoln, 107 F. Supp. 2d 108, 120-21 (D. Mass. 2000) (observing that "the majority of district courts . . . have held that the appropriate remedy for a violation of the TCA is a mandatory injunction"). Four district courts have expressly held that damages are not available under the TCA itself. See AT&T Wireless v. City of Atlanta, 50 F. Supp. 2d 1352, 1362-64 (N.D. Ga. 1999) (reversed on other grounds); Primeco Personal Communications Ltd. P'ship v. Lake County, 1998 WL 565036 (M.D. Fla. July 20, 1998); Virginia Metronet v. Board of Supervisors of James City County, 984 F. Supp. 966 (E.D. Va. 1998); Illinois RSA No. 3 v. County of Peoria, 963 F. Supp. 732 (C.D. Ill. 1997).

important, attorney's fees would be available. TCA plaintiffs are often large corporations or affiliated entities, whereas TCA defendants are often small, rural municipalities. Such municipalities may have little familiarity with the TCA until they are confronted with a TCA claim, and in land-use matters they may generally rely on attorneys who may likewise know little about the TCA. See Omnipoint Communications v. Penn Forest, 42 F. Supp. 2d 493, 506 (M.D. Pa. 1999). Allowing TCA plaintiffs to recover attorney's fees from such municipalities might significantly alter the Act's remedial scheme and thus increase the federal burden on local land-use regulation beyond what Congress intended. We are therefore persuaded that the TCA contains a remedial scheme that is sufficiently comprehensive to show that Congress impliedly foreclosed resort to S 1983.

We are aware that a panel of the Eleventh Circuit, in a decision that was later vacated, reached a contrary conclusion. See AT&T Wireless PCS, Inc. v. City of Atlanta, 210 F.3d 1322 (11th Cir. 2000), vacated on other grounds, 223 F.3d 1324 (11th Cir. 2000), but we respectfully disagree with the reasoning of that decision.7 The vacated

_____

7. No other federal court of appeals has addressed this question. The District Court decisions are split, but most contain little or no analysis. For decisions holding that a TCA claim of the type involved here may be asserted under S 1983, see, for example, Cellco P'ship v. Hess, 1999 WL 178364 (E.D. Pa. Mar. 30, 1999); MCI Telecomm. Corp. v. Southern New England Tel. Co., 27 F. Supp. 2d 326 (D. Conn 1998); APT Minneapolis, Inc. v. City of Maplewood, 1998 WL 634224 (D. Minn. Aug. 12, 1998); Smart SMR of New York v. Zoning Comm'n of the Town of Stratford, 995

F. Supp. 52 (D. Conn. 1998); Cellco Partnership v. Town Plan & Zoning Comm'n of Farmington, 3 F. Supp. 2d 178, 186 (D. Conn. 1998). Omnipoint Communications v. Zoning Hearing Bd. of Chadds Ford Township, 1998 WL 764762 (E.D. Pa. 1998); Sprint Spectrum v. Town of Easton, 982 F. Supp. 47 (D. Mass 1997).

For contrary decisions, see, for example, Omnipoint Communications v. Charlestown Township, 2000 WL 128703 (E.D. Pa. 2000); Omnipoint Communications v. Easttown Township, 72 F. Supp. 2d 512 (E.D. Pa. 1999); Omnipoint Communications v. Foster Township, 46 F. Supp. 2d 396 (M.D. Pa. 1999); Omnipoint Communications v. Penn Forest, 42 F. Supp. 2d 493 (M.D. Pa. 1999); National Telecomm. Advisors, Inc. v. City of Chicopee, 16 F. Supp. 2d 117 (D. Mass. 1998).

13

decision relied on the TCA's savings clause, which provides that the Act is not to be construed "to modify, impair, or supercede Federal, state, or local law unless so provided in such Act or amendments." Pub. L. No. 104-104S 601(c)(1), 110 Stat. 143 (1996) (reprinted in 47 U.S.C. S 152, historical and statutory notes). However, our holding in this case -- that the relevant provision of the TCA does not create a right that is enforceable under S 1983 -- does not mean that the TCA in any way modified, impaired, or superceded S 1983. We do not hold that enactment of the TCA had any effect on S 1983; we simply hold that the TCA itself did not create a right that can be asserted under S 1983 in lieu of the TCA's own remedial scheme. See Sea Clammers, 453 U.S. at 20 n. 31 (holding, despite savings clause, that comprehensive remedial schemes of water pollution statutes impliedly foreclosed resort toS 1983).

IV

For the reasons explained above, the Order of the District Court, issued in favor of Kingston Township and against NPI, is AFFIRMED.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

14